# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
)
EDDY CHRISPIN,                               )
    *Plaintiff*,                                )
)
v.                                           )
)          Civil Action No.
MICHAEL A. COX, individually and in          )
his capacity as Commissioner of the          )
Boston Police Department,                     )
    *Defendant*.                              )
_____)

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     This action arises from Boston Police Commissioner Michael A. Cox's sudden and unlawful demotion of plaintiff Eddy Chrispin from Deputy Superintendent to Sergeant Detective on July 3, 2024 after Mr. Chrispin had accepted an appointment by the Massachusetts Attorney General to serve as a commissioner on the Massachusetts Peace Officer Standards and Training ("POST") Commission.

2.     Enacted by statute following the murder of George Floyd, the POST Commission is a statewide body designed to build community trust and accountability in law enforcement by, for the first time in the Commonwealth's history, creating certification standards for all Massachusetts police officers.

3.     As set forth below, Mr. Chrispin is a Black Haitian man and a decorated 25-year veteran of the Boston Police Department ("BPD"). Throughout his career he has consistently advocated for increased transparency and accountability in policing, and for increased hiring and promotional opportunities for minority officers. Mr. Chrispin has also been a longtime member

of the Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO"), and served as its president from 2019 to 2021.

4.      Following procedures set forth in POST's enabling statute, MAMLEO submitted Mr. Chrispin's name to Attorney General Andrea Campbell for her consideration for a position as a POST commissioner.  Attorney General Campbell chose to appoint Mr. Chrispin, and he was sworn in as a POST Commissioner on May 24, 2024.

5.      The following month, Mr. Chrispin was informed by Commissioner Cox that his service as a POST commissioner posed a conflict of interest with his service as a BPD Deputy Superintendent.  After the Massachusetts Attorney General's Office and State Ethics Commission confirmed that there was no such conflict of interest under state law, Commissioner Cox continued to maintain the incorrect position that there was such a conflict of interest.  Commissioner Cox then gave Mr. Chrispin an ultimatum: either resign his position as POST commissioner or be demoted from his command staff position at BPD.  When Mr. Chrispin responded that he would not resign from POST, Commissioner Cox demoted him.

6.      Mr. Chrispin still serves the Commonwealth as a POST commissioner, but because of his demotion from a command staff position back to a Sergeant Detective position within the BPD, he works for a lower salary, fewer benefits, has less responsibility, and less opportunity for future advancement.  The 25-year history of Mr. Chrispin's successive promotions within the BPD, and law enforcement more broadly, is now effectively over.

7.      Commissioner Cox's demotion of Mr. Chrispin sends a message to all BPD officers and MAMLEO members that accepting an appointment as POST commissioner will effectively end an officer's promotional opportunities within BPD.  This message – that serving the Commonwealth on a Commission whose goal is to enhance police transparency and

accountability is somehow fundamentally incompatible with serving in a leadership position within the Commonwealth's largest municipal police department – weakens POST just as it is getting off the ground, and undermines its prospects for long-term credibility and effectiveness among law enforcement officers, which is vitally important for its future success.

8.    Mr. Chrispin's decision to accept the Attorney General's appointment as POST commissioner – an appointment that Mr. Chrispin had accepted because it advanced his lifelong commitment to police reform and better police-community relations in Boston – was a constitutionally protected expression of his right to free speech and free association.  By demoting Mr. Chrispin on account of his POST appointment, Commissioner Cox unlawfully retaliated against Mr. Chrispin for expressing his rights under the First Amendment to the United States Constitution and Article 16 of Massachusetts Declaration of Rights.  Moreover, by demoting Mr. Chrispin without a formal notice and hearing, Commissioner Cox also violated Mr. Chrispin's rights to procedural due process under the Fourteenth Amendment to the United States Constitution.

9.    To vindicate his constitutional rights, Mr. Chrispin now files this action pursuant to 42 U.S.C. § 1983 and Mass. Gen. Laws c. 12, §§ 11H and 11I, and demands monetary damages, punitive damages, attorneys' fees and costs, and reinstatement as Deputy Superintendent without any loss of salary or benefits.

## PARTIES

10.    Plaintiff Eddy Chrispin is a Black Haitian man who resides in Boston, Massachusetts.

11.    Defendant Michael A. Cox is a natural person who, on information and belief, resides in Boston, Massachusetts.  From August 2022 to present, Mr. Cox has served as

Commissioner of the BPD.  Commissioner Cox's actions as alleged in this Complaint were undertaken under the color of the laws of the Commonwealth of Massachusetts, the City of Boston, and the BPD.  Commissioner Cox is sued in his individual and official capacities.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this civil action presents federal questions arising under the Constitution and laws of the United States.

13.    Any and all state law claims contained herein form part of the same case or controversy and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this district under 28 U.S.C. § 1391(b) because all parties are citizens of this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendant performs his duties and is subject to personal jurisdiction in this district.

## FACTS

### Chrispin's Background and Service To The BPD

15.    Mr. Chrispin immigrated to the United States from Haiti at seven years old.  He grew up in Mattapan, attended Boston public schools, and graduated from the University of Massachusetts-Boston in 1992.

16.    After graduating from college, Mr. Chrispin worked as a social worker for the Massachusetts Department of Children and Families.  He then chose to attend law school, and graduated from Hofstra Law School in 1996.

17.    After graduating from law school, Mr. Chrispin returned to Boston, worked for a

4

Department of Youth Services program and later became a Probation Officer serving the Dorchester Division of the Boston Municipal Court.

18.    Mr. Chrispin joined the BPD in 1999.  He chose to become a police officer because he fundamentally believed that he could best effect positive change within his community by "working within the system."

19.    After graduating from the police academy, Mr. Chrispin began his career as a Patrol Officer assigned to Roxbury.  Mr. Chrispin served in this role for seven years.

20.    In 2006, Mr. Chrispin served as a Spokesperson for the Boston Police and transferred to the Media Relations department, where he worked for five and a half years.

21.    In 2012, Mr. Chrispin served as an Academy Instructor at the Boston Police Academy where he was responsible for instructing police recruits on all aspects of Academy training, ranging from physical fitness and academic instruction to practical scenario-based training.  Mr. Chrispin served in this role from 2012 to 2018.

22.    In 2018, Chrispin was promoted to the rank of Sergeant.  In this role, he was responsible for supervising patrol officers in all aspects of policing, including monitoring performance, evaluating subordinates, and preparing written performance evaluations.  Mr. Chrispin was also responsible for receiving, reviewing, and resolving conflicts and complaints by citizens against police officers, including investigating and preparing administrative reports.

23.    In 2019, Mr. Chrispin served as the Community Service Sergeant for District B-2 (Roxbury).  Mr. Chrispin served as a liaison between community groups and the District Commander, attending community meetings and informing residents and community groups of current crime trends.

24.    In January 2021, Sergeant Chrispin was again promoted from Sergeant to Deputy

Superintendent, and was selected for command staff by then Commissioner Gross.  BPD command staff serve directly under the Boston Police Commissioner, are part of management, and serve outside any collective bargaining unit.

25.     As a Deputy Superintendent, Mr. Chrispin served as the Assistant Bureau Chief for Internal Affairs, a Zone Commander for the Bureau of Field Services, and then as the Assistant Bureau Chief of Professional Development.

*Chrispin's Advocacy For Police Reform*

26.     During his 25-year career at BPD, Mr. Chrispin has also been a vocal and outspoken advocate for increased transparency and accountability within the department's leadership.  Consistent with a large body of social science and his own on-the-ground experience as a police officer, Mr. Chrispin believes that community trust is essential to public safety, and that transparency and accountability are necessary in order to gain community trust.

27.     During his 25-year career at BPD, Mr. Chrispin has also been a vocal and outspoken advocate for improved hiring and promotional opportunities for minority officers in order to diversify the BPD leadership and better reflect the community that BPD serves.

28.     Mr. Chrispin also has been a longtime member of MAMLEO, a private organization whose mission is to actively work with the BPD and other law enforcement agencies to improve the recruitment, hiring, and career advancement of minority candidates and officers interested in or already working in the law enforcement field.  From 2019 to 2021, Mr. Chrispin served as President of MAMLEO.

29.     Following the murder of George Floyd in 2020, Mr. Chrispin played an active and leading role in initiating and guiding public conversations about police reform in Boston.  He served on an eleven-person Boston Police Reform Task Force appointed by then Mayor Walsh to

review BPD policies and procedures, and present public recommendations for action and reform. One of the Task Force's core recommendations was to "[a]dopt practices that maximize accountability, transparency and public access to the BPD."

*Chrispin's Appointment To POST*

30.    In December 2020, Governor Baker signed "An Act Relative to Justice, Equity and Accountability In Law Enforcement In the Commonwealth," Chapter 253 of the Acts of 2020, which created POST (now codified at Mass. Gen. Laws c. 6E).

31.    POST created a new mandatory certification process for Massachusetts police officers, as well as processes for decertification, suspension of certification, or reprimand in the event of certain misconduct. Before POST's enactment, Massachusetts was one of just a few states without a statewide system for certification and decertification of police officers.

32.    Mass. Gen. Laws c. 6E, § 2 provides that the POST Commission shall consist of nine members appointed in the following manner:

- three members appointed by the Governor as follows: one member shall be a police chief; one member shall be a retired justice of the superior court; and one member shall be a social worker appointed from a list of 5 nominations submitted by the National Association of Social Workers, Inc., Massachusetts chapter;

- three members appointed by the Attorney General as follows: one member shall be a law enforcement officer below the rank of sergeant who is a labor union representative appointed from a list of 3 nominations submitted by the Chair of the Massachusetts Law Enforcement Policy Group; *one member shall be a law enforcement officer appointed from a list of 5 nominations submitted by the Massachusetts Association of Minority Law Enforcement Officers, Inc.*; and one member shall be an attorney licensed to practice law in the commonwealth appointed from a list of 5 nominations submitted by the civil rights and social justice section council of the Massachusetts Bar Association; and

- three members appointed jointly by the Governor and Attorney General, one of whom shall be appointed from a list of 5 nominations submitted by the

7

Massachusetts Commission Against Discrimination.

33.     In the spring of 2024, MAMLEO submitted Mr. Chrispin's name to Attorney General Andrea Campbell as a potential nominee to POST.

34.     After an interview and vetting process by the Attorney General's Office, Attorney General Campbell selected Mr. Chrispin as the MAMLEO member whom she would appoint as a POST commissioner.  Given his lifelong commitment to enhancing police-community relations, he was honored and humbled to be appointed by the Commonwealth's top law enforcement officer to this first-ever police accountability commission.

35.     Mr. Chrispin was sworn in as a POST commissioner on May 24, 2024.

36.     Service as a POST commissioner is part-time, unpaid, and did not interfere with Mr. Chrispin's ability to fully perform his duties as BPD Deputy Superintendent.  POST commissioners hold a regular public meeting each month, and Mr. Chrispin arranged to attend and prepare for these meetings during times when he would not otherwise be scheduled to work as Deputy Superintendent.

*Defendant's Retaliation Against Plaintiff On Account Of His POST Appointment*

37.     Shortly after he was sworn in as POST Commissioner, Mr. Chrispin notified BPD Superintendent-in-Chief Gregory Long, his immediate supervisor, by text message. Superintendent-in-Chief Long responded: "That's good. Congratulations." A copy of this text message is attached as **Exhibit A**.

38.     Thereafter, on or around June 20 or 21, 2024, Mr. Chrispin began hearing that Commissioner Cox personally took issue with his appointment.  Mr. Chrispin then approached Commissioner Cox to address the issue directly, but the Commissioner brushed him off and stated that he would reach out later.

39.     On June 24, 2024, Mr. Chrispin again attempted to speak with Commissioner Cox about this topic, but was again brushed off.

40.     On or about June 25, 2024, Mr. Chrispin received a phone call from Attorney David Fredette, Legal Advisor to the BPD, advising him that the department's leadership believed that his service as POST commissioner posed a conflict of interest with his role as Deputy Superintendent because he was privy to highly sensitive BPD information while serving in a command staff position.  Mr. Chrispin responded to Attorney Fredette that there was no conflict of interest because, as a POST commissioner, he could recuse himself from acting on any matters involving the BPD.  He also explained that under POST's enabling statute, active service in a command position within a police department was not incompatible with active service on the POST Commission.  For example, the enabling statute requires at least one POST commissioner to be a police chief, and Framingham Police Chief Lester Baker currently serves as a POST Commissioner.

41.     Following the phone call from Attorney Fredette, Mr. Chrispin contacted the Massachusetts Attorney General's Office and State Ethics Commission, which both confirmed that there was no prohibited conflict of interest.

42.     On June 27, 2024, Mr. Chrispin sent an email to Commissioner Cox, Attorney Fredette, Superintendent-in-Chief Long, Nicole Taub, Chief of Staff and Senior Advisor for Policy and Legal Affairs to the Police Commissioner, and Amanda Hainsworth, Senior Legal Advisor to Attorney General Campbell, stating that that there was not a conflict of interest between his service as a BPD Deputy Superintendent and his service as a POST Commissioner, so long as he recused himself from acting as a POST Commissioner on any matter involving a member of BPD.  A copy of this email is attached at **Exhibit B**.

43.     On or about June 28, 2024, Commissioner Cox called Mr. Chrispin into his office for a one-on-one meeting.  He questioned his service on POST.  Commissioner Cox asked whether Mr. Chrispin was acting as a MAMLEO representative on POST.  He also asked him, "What do you see yourself doing in the future?"  He stated that Command Staff had more professional value than participation on POST, and that "[Mr. Chrispin] can't serve two masters."

44.     The next day, Commissioner Cox called Mr. Chrispin back into office, and gave him an ultimatum: either resign his position as POST commissioner or be demoted from the command staff.

45.     Attorney Fredette later called Mr. Chrispin and stressed that he needed to choose very soon between keeping the POST appointment or being "broken" (a term referring to a police officer being stripped of rank).

46.     On July 1, 2024, Mr. Chrispin responded to Commissioner Cox by e-mail that he would not resign from POST, as there was no conflict between his service as Deputy Superintendent and his service as a POST commissioner, and that he remained fully committed to fulfilling his duties as a BPD Deputy Superintendent.  A copy of this e-mail is attached at **Exhibit C**.

47.     On July 3, 2024, Commissioner Cox issued an order demoting Mr. Chrispin from Deputy Superintendent to Sergeant Detective.  This order circulated within the entire BPD, was reported on in the media, and had the effect of publicly humiliating Mr. Chrispin, who had engaged in no misconduct and had, up to that point, been steadily promoted within the department during the past 25 years.

48.     As a result of this demotion, Mr. Chrispin experienced significant harm, including

a reduction in salary and benefits, a reduction in the level of benefits for which he can be eligible upon retirement, and mental anguish and emotional distress caused by the public humiliation of his demotion and the prospect that his career advancement within BPD is now effectively over because he chose to accept the Attorney General's appointment to serve on POST in furtherance of his deeply-held personal beliefs in favor of police reform.

49.     Following his demotion, Mr. Chrispin also experienced problems with the BPD's handling of his pay and benefits.  For example, Mr. Chrispin had arranged to use comp time prior to his demotion, but was told after his demotion that he was no longer eligible for any comp time, including that which he had accrued in the bank.

50.     Following the demotion, Mr. Chrispin was re-assigned from the Boston Police Academy to a Charlestown district that is less busy, and gives him fewer opportunities for community engagement than in his prior roles.  Mr. Chrispin's trajectory for future advancement within the BPD, and the larger law enforcement community, is now effectively over due to Commissioner Cox's action against him.

## COUNT I
### 42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION

51.     Mr. Chrispin repeats and realleges each of the foregoing allegations as if set forth fully herein.

52.     At all relevant times, under the First and Fourteenth Amendments to the United States Constitution, Mr. Chrispin had a right to freedom of expression and freedom of association without fear of reprisal by state actors for his engaging in constitutionally protected activities.

53.     Mr. Chrispin's advocacy in support of police reform, his association with MAMLEO, his statements on behalf of MAMLEO, his decision to accept MAMLEO's

nomination as a potential POST commissioner, his decision to accept Attorney General Campbell's appointment as a POST commissioner, and his association with POST were all constitutionally protected expressions of free speech and association under the First and Fourteenth Amendments to the United States Constitution. These activities were not required as a condition of Mr. Chrispin's employment at the BPD, or part of the ordinary course of his duties as a BPD officer, but rather were activities that Mr. Chrispin undertook as a private citizen speaking out on matters of public concern.

54.    Commissioner Cox's demotion of Mr. Chrispin, under color of state law, was undertaken intentionally or with reckless disregard for Mr. Chrispin's constitutional rights to freedom of speech and freedom of association.

55.    A reasonable public official would have known that Commissioner Cox's actions were in violation of Mr. Chrispin's constitutionally protected rights.

56.    As a direct and proximate result of the actions of Commissioner Cox, Mr. Chrispin suffered serious harm including reduced salary and benefits, a reduction in the anticipated amount of his pension upon retirement, mental anguish, and emotional distress.

## COUNT II
## MASS. GEN. LAWS c. 12, §§ 11H, 11I – RETALIATION FOR EXERCISING RIGHTS TO FREEDOM OF EXPRESSION AND ASSOCIATION

57.    Mr. Chrispin repeats and realleges each of the foregoing allegations as if set forth fully herein.

58.    At all relevant times, under the First and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the Commonwealth of Massachusetts, including but not limited to Article 16 of the Massachusetts Declaration of Rights and M.G.L. c. 12, §§ 11H, 11I, Mr. Chrispin had a right to freedom of expression and freedom of association

without fear of reprisal by state actors for his engaging in constitutionally protected activities.

59.     Mr. Chrispin's advocacy in support of police reform, his association with MAMLEO, his statements on behalf of MAMLEO, his decision to accept MAMLEO's nomination as a potential POST commissioner, his decision to accept Attorney General Campbell's appointment as a POST commissioner, and his association with POST were all constitutionally protected expressions of free speech and association under the First and Fourteenth Amendments to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights.  These activities were not required as a condition of Mr. Chrispin's employment at the BPD, or part of the ordinary course of his duties as a BPD officer, but rather were activities that Mr. Chrispin undertook as a private citizen speaking out on matters of public concern.

60.     Commissioner Cox's demotion of Mr. Chrispin, under color of state law, was undertaken intentionally or with reckless disregard for Mr. Chrispin's constitutional rights to freedom of speech and freedom of association.

61.     A reasonable public official would have known that Commissioner Cox's actions were in violation of Mr. Chrispin's constitutionally protected rights.

62.     As a direct and proximate result of the actions of Commissioner Cox, Mr. Chrispin suffered serious harm including lost pay and benefits, a reduction in the anticipated amount of his pension upon retirement, mental anguish, and emotional distress.

### COUNT III
### 42 U.S.C. § 1983 - VIOLATION OF PROCEDURAL DUE PROCESS

63.     Mr. Chrispin repeats and realleges each of the foregoing allegations as if set forth fully herein.

64.     Mr. Chrispin had a constitutionally protected property interest in his employment

as a Deputy Superintendent at the BPD.

65.     The Fourteenth Amendment to the United States Constitution, Chapter 31 of the Massachusetts General Laws, and Rule 109 of the Rules and Procedures of the Boston Police Department afforded Mr. Chrispin a right to notice and a formal hearing before any action by the Commissioner to reduce his rank.

66.     By and through the actions described above, Defendants deprived Mr. Chrispin of his constitutionally protected property interest in his employment as a BPD Deputy Superintendent without due process of law.

67.     As a result of Defendant's violation of Mr. Chrispin's right to procedural due process, Mr. Chrispin experienced harm including a reduction in salary and benefits, a reduction in the level of benefits for which he can be eligible upon retirement, and mental anguish and emotional distress.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff Eddy Chrispin prays that the Court:

A.     Enter judgment in his favor on all counts of the Complaint;

B.     Award Chrispin all damages available by law, including without limitation compensation for back pay and benefits, loss of future pay and benefits, and emotional distress, in an amount to be determined by a jury, in addition to statutory interest, both pre-judgment and post-judgment;

C.     Enter an Order that Plaintiff be re-instated to the position of BPD Deputy Superintendent without any loss of rank or compensation;

D.     Award Plaintiff punitive damages in an amount to be determined by a jury;

E.     Award Plaintiff his attorneys' fees and costs incurred and expended by him in the prosecution of this complaint; and

F.     Enter any other relief that this Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

EDDY CHRISPIN,

By his attorneys,

*/s/ Andrew R. Dennington*

_____
Andrew R. Dennington (BBO # 666892)
Scott G. Ofrias (BBO #697908)
CONN KAVANAUGH ROSENTHAL PEISCH &
FORD, LLP
One Federal Street, 15th Floor
Boston, MA 02110
(617) 482-8200
adennington@connkavanaugh.com
sofrias@connkavanaugh.com

and

*/s/ Sophia L. Hall*

_____
Sophia L. Hall (BBO # 684541)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Floor 5
Boston, MA 02110
(617) 482-1145
shall@lawyersforcivilrights.com

Dated:  April 3, 2025

# Exhibit A



# **<u>Exhibit B</u>**

**From:** Eddy Chrispin <eddy.chrispin@pd.boston.gov>
**Date:** June 27, 2024 at 2:56:25 PM EDT
**To:** Michael Cox <michael.cox@pd.boston.gov>, Nicole Taub <nicole.taub@pd.boston.gov>, Gregory Long <gregory.long@pd.boston.gov>, David Fredette <david.fredette@pd.boston.gov>, Amanda Hainsworth <amanda.hainsworth@mass.gov>
**Subject: Concern Regarding Conflict of Interest**


Sir,

Boston Police Legal Advisor, David Freddette called me on June 25, 2024 and indicated that he was calling me on your behalf. He went on to state that you, along with Chief of Staff, Nicole Taub, believe that there is a conflict of interest with my serving as a Commissioner on the Peace Officers' Standards and Training (POST) Commission while also serving as a member of the Boston Police command staff. He stated that this is because I am privy to certain high-level communications as part of the command staff and that this could potentially cause a conflict of interest. I then explained to Attorney Fredette that for all such possible issues, I have the ability to recuse myself and/or explain any connection. I would weigh in on the case(s) if I believed I had the ability to be unbiased and objective as per the "Conflict of Interest" Law.

Lastly, he stated that you reported to him that there is a continued to be due to a conflict of interest, and that I would have to leave the POST Commission if I wanted to continue to serve on the command staff. Subsequently, I called Atty. Fredette back and informed him that Lester Baker, Chief of the Framingham Police Department is one of the three police representatives on the POST Commission and that the Attorney General's Office had not flagged any potential issues either with him or with me serving on the POST Commission. It is also worth noting that the drafters/legislators of the POST bill clearly understood the role that sworn officers would have on the Commission and the level of clarity that they would bring to issues before them. Additionally, the legislators did not limit or articulate any "conflicts of interest" that would be presented by a police officer of *any* rank.

I am deeply bothered by this decision and the ultimatum that has been given to me. I joined policing in 1999 to be a change agent, and through my actions, I have continued to work tirelessly towards improving policing in every way. As a black man who grew up in the City of Boston, I have been very intentional in the roles that I have played in being a catalyst for change- being named to the Boston Police Reform task Form, President of the Massachusetts Association of Minority Law Enforcement Officers (MAMLEO) and numerous community conversations on policing communities of color, youth engagement, etc. Being a member of the POST Commission not only allows me to weigh in on cases of certification or decertification, but also to enlighten Commission members on matters of policing that can only come from firsthand experience in the field, and my lived experience as an immigrant, black man.

I am attaching a copy of the POST bill for your review to hopefully shed some light on your perspective that there is a conflict of interest in my serving on the POST-C and as a member of the command staff. POST Commission definition of law enforcement officer found here: https://malegislature.gov/Laws/GeneralLaws/PartI/TitleII/Chapter6E/Section1
POST Commission appointing requirements for the MAMLEO seat found here: https://malegislature.gov/Laws/GeneralLaws/PartI/TitleII/Chapter6E/Section2
It should be noted that MGL c.268E, MA. Conflict of Interest specifically addresses any conflicts that may occur in my capacity as a Commissioner on the Post Commision and as a public employee. I have reached out to the Attorney General's Office for clarity on this issue, and they see no conflict of interest in my serving in both capacities. Additionally, I have reached out to the Ethics Commission to determine if there are any conflicts in serving in both roles and they also asserted that there is no conflict of interest.

I hope that this email brings clarity to any concerns that you and the Chief of Staff have regarding conflicts that exist in serving in both roles.

Respectfully submitted,
*"Culture is what you tolerate and what you celebrate."*
Eddy Chrispin, *J.D.*
Deputy Superintendent
Bureau of Professional Development
85 Williams Avenue
Hyde Park, MA 02136

# Exhibit C

**From:** Eddy Chrispin <eddy.chrispin@pd.boston.gov>
**Date:** July 2, 2024 at 6:07:22 PM EDT
**To:** Michael Cox <michael.cox@pd.boston.gov>, Amanda Hainsworth
<amanda.hainsworth@mass.gov>
**Subject: Command Staff Decision**


Sir,


The conversations we have had over the past several days have been
insightful, meaningful, and thought provoking. While I appreciate the
dialogue and our different perspectives, you have given me an
ultimatum to either resign from the command staff or the POST
Commission, a decision I firmly believe is yours to make. That being

said, I cannot, in good conscience, resign from the POST in order to serve on the command staff, or vice versa.

I am dismayed that, after years of hard work and commitment to the department's mission and your vision since you became commissioner, that I am at this crossroads. I value the work I have done on the command staff, whether working in the Bureau of Professional Standards, the Bureau of Field Services, or the Bureau of Professional Development. And while I am fully committed to being a part of the command staff, I have actively participated in community engagement with seniors, educational seminars for new immigrants, youth dialogues, recruiting efforts, and panel discussions on policing communities of color post George Floyd. Additionally, I have served on the Boston Police Reform Task Force, trained OPAT personnel, served as MAMLEO president, and instructed as an adjunct professor at numerous colleges and universities, most recently teaching a class on criminal justice reform. All these experiences contribute to my ability to adequately advance change within policing and externally by bridging the gap between the community and the police.

You have stated numerous times that you want members of your command staff to be fully committed to advancing your strategies. This aligns with my work ethics and personal values. I always strive to be an excellent team member, and I have no reservations about my ability to meet any tasks that may be assigned to me.

Respectfully submitted,
Eddy Chrispin, *J.D.*
Deputy Superintendent
Bureau of Professional Development
85 Williams Avenue
Hyde Park, MA 02136
phone: (617) 343-9924
fax:     (617) 343-9694
*"Culture is what you tolerate and what you celebrate."*