**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

EDDY CHRISPIN,
      *Plaintiff*,

v.

MICHAEL A. COX, individually and in his
official capacity as Commissioner of the Boston
Police Department,
      *Defendant*.

No. 1:25-cv-10793-ADB

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

I.   The Complaint Does Not Plausibly Allege Commissioner Cox Retaliated Against Plaintiff for His Support of Police Reform or Membership in MAMLEO.........................1

II.  Accepting an Appointment on POST is Not Protected by the First Amendment as Freedom of Speech or Freedom of Association..................................................................3

III. Even if Service on the POST Commission Was Somehow Protected Speech or Association, The Commissioner Could Remove Plaintiff from the Command Staff..........5

    a.   Plaintiff Could be Removed from the Command Staff Because He Was "Involved In" Policy ................................................................................. 6

    b.   Even if Plaintiff Was Not "Involved In" Policy, *Pickering* Favors the Commissioner ....................................................................................... 8

IV.  The Complaint Fails to Adequately Allege a Violation of the Mass. Civil Rights Act ("MCRA")..............................................................................................................10

V.   Plaintiff Received All the Process He Was Due..................................................12

VI.  Regardless, Qualified Immunity Applies ...........................................................15

i

The Complaint makes clear that the Commissioner of the Boston Police Department ("BPD") did not want a member of his command staff, which constitutes the leadership of the BPD, serving concurrently on the Massachusetts Peace Officer Standards and Training ("POST") Commission, which the Complaint describes as the Commonwealth's "first-ever police accountability commission" (i.e., one of BPD's regulators). Whatever the wisdom of that decision is, it does not violate the United States Constitution. Plaintiff complains that the Commissioner's decision "weakens POST just as it is getting off the ground, and undermines its prospects for long-term credibility and effectiveness among law enforcement officers, which is vitally important for its future success." Compl. ¶ 7. That is a policy disagreement, not a constitutional claim. Accordingly, Plaintiff's lawsuit must be dismissed.

## I. The Complaint Does Not Plausibly Allege Commissioner Cox Retaliated Against Plaintiff for His Support of Police Reform or Membership in MAMLEO

There is no indication anywhere in the Complaint that Commissioner Cox or anyone else at BPD took issue with Plaintiff's "outspoken advocac[y]" for police reform or his service on— and leadership of— the Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO"). *See* Compl. ¶¶ 26, 27. Indeed, Plaintiff alleges that he "has *consistently* advocated for increased transparency and accountability in policing, and for increased hiring and promotional opportunities for minority officers," *id*. ¶ 3 (emphasis added), and that "*[d]uring his 25-year career at BPD*, [Plaintiff] has [ ] been a vocal and outspoken advocate for increased transparency and accountability within the department's leadership . . . ." *Id.* ¶ 26 (emphasis added). Plaintiff also alleges that he has "been a *longtime* member of the Massachusetts Association of Minority Law Enforcement Officers ('MAMLEO') and served as its president from 2019 to 2021," *id.* ¶ 3 (emphasis added), and that, "[f]ollowing the murder of George Floyd in 2020, [he has] played an active and leading role in initiating and guiding public conversations

1

about police reform in Boston" and "[has] present[ed] public recommendations for action and reform." *Id.* ¶ 29.

Despite (or because of) this history of vocal advocacy and leadership of MAMLEO, Plaintiff received "successive promotions within the BPD," *id.* ¶ 6, including prestigious appointments as Spokesperson for the BPD, *id.* ¶ 20, Academy Instructor, *id.* ¶ 21, and Community Service Sergeant, *id.* ¶ 23. Indeed, *during or after* Plaintiff's MAMLEO presidency, he was appointed to the Command Staff, which belies any allegation that his association with MAMLEO harmed him in any way. *Compare id.* ¶ 3 (served as MAMLEO president 2019-2021) *with* ¶ 24 (selected for Command Staff in January 2021). Moreover, Michael Cox became Commissioner of the Boston Police Department in the summer of 2022, and Plaintiff remained on the Command Staff under Commissioner Cox's leadership for almost two years without interruption.

**The Complaint plausibly alleges that Plaintiff was removed from the Command Staff for one reason and one reason alone—accepting a POST appointment.** Plaintiff admits this in a section heading on page 8 of his Complaint: "Defendant's Retaliation Against Plaintiff On Account Of His POST Appointment." *Id.* at 8. Plaintiff specifically alleges that "Commissioner Cox personally took issue with his [POST] appointment," *id.* ¶ 38, but nowhere alleges that Commissioner Cox took issue with Plaintiff's vocal advocacy, which had been ongoing for 25 years. Similarly, Plaintiff specifically alleges that "the department's leadership believed that his service as POST commissioner posed a conflict of interest," *id.* ¶ 40, but nowhere alleges that the Commissioner's concerns were pre-textual in any way. Indeed, Plaintiff just disagrees with the Commissioner's assessment that service on POST posed a conflict. *Id.* ¶ 42. And Plaintiff concedes that Commissioner Cox allowed him to remain on the Command

Staff if he declined to serve on POST, *id.* ¶ 44, underscoring that it was only Plaintiff's POST service that caused his removal from the command staff—not his association with MAMLEO or his speech in support of police reform. *Id.* ¶¶ 44–47. That allegation alone is fatal to any claim that Plaintiff was removed from the Command Staff for any reason *other than* his decision to accept the POST appointment.

## II. Accepting an Appointment on POST is Not Protected by the First Amendment as Freedom of Speech or Freedom of Association

The gravamen of Plaintiff's complaint is that his "*decision* to accept the Attorney General's appointment as a POST commissioner . . . was a constitutionally protected expression of his right to free speech and free association." *Id.* ¶ 8 (emphasis added). As a matter of law, Plaintiff is incorrect.

With respect to speech, Plaintiff fails to identify the speech that is the purported cause of his demotion. Perhaps if Plaintiff alleged that something he *said* as a member of POST caused his demotion, he might have a valid First Amendment claim. But he has done no such thing here. Indeed, there is no particular speech identified anywhere in the Complaint, which means that his freedom of speech claim fails as a matter of law. *See DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) ("A First Amendment claim requires [plaintiff] to identify protected speech."); *Dennison v. Cnty. of Frederick, Va.*, 921 F.2d 50, 54 (4th Cir. 1990) ("Since [Plaintiff] cannot identify any particular speech, symbolic or otherwise, for which he was punished, we hold that, as a matter of law, his first amendment right to freedom of speech could not have been violated."); *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 445 (D. Mass. 2013) (dismissing action where Plaintiffs "have not identified the protected speech that allegedly motivated retaliation . . ." (citation omitted)).

As to whether Plaintiff's *decision* to join POST functioned as some sort of speech, the Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  Defendant has been unable to locate a single case in which the act of joining a government board has constituted protected "speech." And any theory that the act of joining POST was meant to serve as an expression of Plaintiff's general support for police reform is foreclosed by Section I of this Memorandum of Law: the Complaint does not plausibly allege that Plaintiff was demoted for his support for police reform, no matter how such support was expressed.

With respect to freedom of association, the Court should decline Plaintiff's invitation to create a novel constitutional right of association *with the government* by joining a government board.  *See Chernov v. City of Hollywood*, 819 F. Supp. 1070, 1074 (S.D. Fla. 1993), *aff'd*, 19 F.3d 1446 (11th Cir. 1994) ("Plaintiff's attempts to appear before the [city] commission do not implicate his First Amendment right of association.  Plaintiff's beliefs can only become 'known to the outside world' through his speech at the commission meeting, not through his association with the commission.").  And, of course, there is "no constitutional right to participate directly in government policymaking."  *Pavia v. Coyne-Fague*, No. 21-1746, 2022 WL 2915696, at *3 (1st Cir. Jul. 25, 2022) (quoting *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 272, 284 (1984).[1]

The Supreme Court has explained the right to associate by noting that "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could

---

[1]   The principle that service on a government board or commission does not qualify as "speech" or "association" for purposes of the First Amendment, with all of the attendant protections, does not have any bearing on other Constitutional protections associated with government action.  For instance, discrimination in the selection of individuals for service on a government board or commission could implicate the equal protection clause.

not be vigorously protected from interference by the State unless a correlative freedom to engage in *group effort toward those ends* were not also guaranteed." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (emphasis added). As this explanation makes clear, the right protects the ability of individuals to associate with other individuals—not the right of individuals to associate *with the state*. *See id.* at 618–19 (describing association right as protecting "from unjustified interference by the State," and noting that associational rights are "critical buffers between the individual and the power of the State"). For instance, in the Supreme Court cases involving laws that burden ballot rights, the Court has spoken of a burden on "the right of individuals to associate for the advancement of political beliefs," rather than the putative right of citizens to associate themselves with the state by pursuing and being elected to public office. *See Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Had there been a right to associate *with the state itself*, the Supreme Court would have spoken in such terms.

Finally, Plaintiff's novel theory that there is a right to associate with a government board directly contradicts the "well-settled" principle that "the First Amendment offers no protection against compelled association with government actors or the government itself." *See Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45, 55 (D.D.C. 2006). If there is no right *not to* associate with the government itself, there is no right *to associate* with the government itself. In short, because Plaintiff is asserting constitutional rights that simply do not exist, his Complaint must be dismissed under Rule 12(b)(6).

## III.    Even if Service on the POST Commission Was Somehow Protected Speech or Association, The Commissioner Could Remove Plaintiff from the Command Staff

Because Plaintiff fails to articulate a cognizable freedom of speech or freedom of association right, the Court need not reach the traditional *Pickering* balancing test governing the limits of First Amendment rights of public employees. *See generally Foote v. Town of Bedford*,

642 F.3d 80 (1st Cir. 2011).  However, even if the Court were to find—for the first time— that

the very act of service on a government board qualifies as "speech" or "association" protected by

the First Amendment, the Complaint should nonetheless be dismissed for two independent

reasons, either of which is sufficient for dismissal: (1) as a member of the Command Staff,

Plaintiff had a sufficiently senior governmental post such that *Pickering* favors Commissioner

Cox as a matter of law; and (2) even if Plaintiff were not a senior officer, *Pickering* would favor

Commissioner Cox as a matter of law because Commissioner Cox had a "legitimate purpose in

promoting efficiency and integrity in the discharge of official duties."  *Connick v. Myers*, 461

U.S. 138, 150 (1983) (internal quotations and citation omitted).

### a.  Plaintiff Could be Removed from the Command Staff Because He Was "Involved In" Policy

Plaintiff has not identified any speech that was the cause of his termination.  But even if

he had, it is well established that "where an employee is in a policymaking or confidential

position and is terminated for speech related to his political or policy views, the *Pickering*

balance favors the government as a matter of law."  *Rose v. Stephens*, 291 F.3d 917, 922 (6th Cir.

2002).  The First Circuit adopted this view in *Foote* because the "government must be allowed to

accomplish its policy objectives through loyal, cooperative deputies whom the public will

perceive as sharing the administration's goals."  *Foote*, 642 F.3d at 84 (citations omitted).

Therefore, "[o]fficials who rise to the level of [Plaintiff] do so at the cost of any *constitutional*

tenure protection against political discharge[.]"  *Flynn v. City of Bos.*, 140 F.3d 42, 46 (1st Cir.

1998) (emphasis in original).

Here, Plaintiff was in a "position of trust" and thus could be terminated for his political or

policy views.  The Court need look no further than Plaintiff's striking admission—in an email

attached to the Complaint—that: "You have given me an ultimatum to either resign from the

command staff or the POST Commission, *a decision I firmly believe is yours to make*." Compl. Ex. C, ECF No. 1-5 at 2 (emphasis added). Furthermore, the Complaint alleges that, as a member of the Command Staff, Plaintiff "serve[d] *directly* under the Boston Police Commissioner" (emphasis added), was "part of management" of the BPD, and was "outside of any collective bargaining unit." Compl. ¶ 24. His most recent role was "Assistant Bureau Chief of Professional Development." *Id.* ¶ 25. The law governing the Command Staff states that the Commissioner may appoint members of the BPD to the Command Staff as "he may from time to time deem proper," and further provides that members of the Command Staff are generally exempt from civil service protections. *See* 1964 Mass. Acts. 720–21. *See generally Savage v. Gorski,* 850 F.2d 64, 69 (2d Cir. 1988) (in determining applicability of political termination protections under the Constitution, "[b]oth the interests of federalism and the conservation of judicial resources would ordinarily be better served by the federal courts' giving substantial deference to the state's judgment where government positions are so defined").

    The First Circuit has "regularly upheld against First Amendment challenge the dismissal on political grounds of mid- or upper-level officials or employees who are significantly connected to policy-making . . . . [I]t is enough that the official be *involved* in policy, even if only as an adviser, implementer, or spokesperson[.]" *Flynn*, 140 F.3d at 45–46 (emphasis in original). Conversely, "[i]t is primarily low-level jobs that have been protected, although this encompasses most workers in most agencies of government." *Id.* at 45. As a member of the Command Staff, Plaintiff qualifies as being "involved in policy, even if only as an adviser, implementer, or spokesperson." *See id.* at 46 (emphasis omitted). *See also Hadfield v. McDonough*, 407 F.3d 11, 18–19 (1st Cir. 2005) (Assistant Deputy Superintendent for Training in Plymouth County Sheriff's department was subject to political termination).

b. **Even if Plaintiff Was Not "Involved In" Policy, *Pickering* Favors the Commissioner**

Even if Plaintiff's service on POST could possibly constitute "speech" or "association," and even if Plaintiff was *not* "involved in policy," the Complaint should still be dismissed because the City's "interest in the effective and efficient fulfillment of its responsibilities to the public" and "legitimate purpose in promoting efficiency and integrity in the discharge of official duties" outweighs Plaintiff's interest in his so-called "speech." *Connick*, 461 U.S. at 150 (internal quotations and citation omitted). The "*Pickering* balancing inquiry" is "a matter of law for the Court to decide." *MacRae v. Mattos*, 106 F.4th 122, 136 (1st Cir. 2024) (citation omitted). Although often difficult to assess on a motion to dismiss, this is "a case where the well-pleaded facts simply do not survive *Pickering* analysis." *Manchester v. Ludlow*, No. 23-30117-MGM, 2025 WL 1208717, at *6 n.7 (D. Mass. Apr. 25, 2025).

The Complaint itself alleges the salient issue associated with Plaintiff's service on the POST commission: the Commissioner believed there was a conflict between Plaintiff "serving as a Commissioner of [POST] while also serving as a member of the Boston Police command staff" because Plaintiff is "privy to certain high-level communications as part of the command staff[.]" Compl. Ex. B, ECF No. 1-4 at 2. Indeed, the POST statute and regulations require certain actions from law enforcement agencies that involve a considerable degree of discretion. For instance, the POST regulations require that a police department must "within two days of their receipt of a complaint, which is any *credible* report . . . alleging the misconduct of an officer," provide the complaint to POST, unless the complaint relates to "*minor* matters." *See* 555 Mass. Code Regs. 1.01(1) (2024) (emphasis added). The regulations also require a police department to forward to POST "any *pattern* of complaints alleging the misconduct of an officer," and state

that any reports not required by POST regulations can be forwarded to POST "at the [police department's] *discretion*." *Id.* (emphasis added).

As a member of the Command Staff, Plaintiff was "privy to certain high-level communications," Compl. Ex. B, ECF No. 1-4 at 2, that may relate to the BPD's compliance with POST regulatory standards, thereby impeding BPD senior staff's ability to communicate freely, which is necessary for the efficient operation of the department. Indeed, the First Circuit has noted that, with respect to the *Pickering* test, the "government's interest is particularly acute in the context of law enforcement, where there is a heightened interest in maintaining discipline and harmony among employees[.]" *Jordan v. Carter*, 428 F.3d 67, 74 (1st Cir. 2005) (internal quotations and citations omitted).

Moreover, Commissioner Cox need not show that any particular speech or association caused a disruption: "a government employer's reasonable prediction of disruption is afforded significant weight in the *Pickering* inquiry, even if the speech at issue is on a matter of public concern." *MacRae*, 106 F.4th at 138 (citation omitted). And of course, it is reasonable that a member of the BPD's senior staff concurrently serving as a commissioner of POST (which is the primary regulator of BPD) could cause significant issues in the Department. Plaintiff's retort is that the "Attorney General's Office and State Ethics Commission confirmed that there was no such conflict of interest under state law." Compl. ¶ 5. That may be true, but it is entirely beside the point. State conflict of interest law governs the *legal* conflicts between *private* interest and *public* interest—state conflict of interest law does not speak to the efficiencies of running a police department or any regulated government agency and certainly does not speak to how the Commissioner of the BPD should run his Command Staff, when he has sole discretion to determine the composition of the Command Staff.

IV.    **The Complaint Fails to Adequately Allege a Violation of the Mass. Civil Rights Act ("MCRA")**

Plaintiff's MCRA claim fails for two independent reasons: first, Plaintiff fails to plead that his rights to freedom of speech or freedom of association were violated (*see* Sections II–III, *supra*); and second—even if his rights were violated—Plaintiff fails to plead the required "threats, intimidation or coercion."

Plaintiff has not pled any violation of his freedom of speech or association under the First Amendment. *See* Sections II–III, *supra*. Neither has Plaintiff pled any violation of Article 16 of the Massachusetts Declaration of Rights. Massachusetts courts have "interpreted the protections of free speech and association under [the Mass.] Declaration of Rights to be 'comparable to those guaranteed by the First Amendment.'" *1A Auto, Inc. v. Director of Office of Campaign and Political Finance*, 480 Mass. 423, 440 (2018) (citation omitted). Although in certain discrete circumstances the Supreme Judicial Court has found that Article 16 provides greater protection than the First Amendment, *see, e.g.*, *Mendoza v. Licensing Bd. of Fall River*, 444 Mass. 188, 200–01 (2005) (nude dancing), there are no cases in which the Court has expanded the retaliation protections of the First Amendment. When analyzing an Article 16 freedom of speech and association claim, Massachusetts courts "[are] guided by a First Amendment analysis." *Mahoney v. Ragucci*, No. 991196, 2001 WL 34059084, at *5 (Mass. Super. Ct. May 11, 2001). Following a First Amendment analysis, just as there is no breach of Plaintiff's First Amendment freedom of speech and association rights (*see* Sections II–III, *supra*), there is no breach of Plaintiff's Article 16 freedom of speech and association rights.

Second, even if Plaintiff's First Amendment or Article 16 rights were violated, Plaintiff fails to plead "threats, intimidation or coercion" as required by the MCRA. Unlike section 1983, Plaintiff cannot state a cause of action under the MCRA unless he alleges that his rights were

deprived "by threats, intimidation or coercion." *Santiago v. Keyes*, 890 F. Supp. 2d 149, 153–54 (D. Mass. 2012) (citing Mass. Gen. Laws ch. 12, §§ 11H, 11I). A threat is "intentional exertion of pressure to make another fearful or apprehensive of injury or harm," intimidation is "putting a person in fear for the purpose of compelling or deterring his or her conduct," and coercion is "application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.* at 154 (citation omitted). "[A]lmost all of the reported cases [under the MCRA] involve an element of physical force or confrontation." *Amirault v. City of Malden*, 241 F. Supp. 3d 288, 305 (D. Mass. 2017) (rejecting MCRA claim for police officer reassigned from head of the Detective Unit to a newly created position because he did not allege any threats, intimidation, or coercion). Here, Plaintiff has not pled any physical force or confrontation related to his demotion. *See* Compl. ¶¶ 42–47, 54.

To the extent Plaintiff believes that the communications leading up to his demotion constituted non-physical coercion, the First Circuit has held that "[a]lthough purely economic pressures may constitute actionable coercion under the MCRA, the exception for claims based on non-physical coercion remains a narrow one." *Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018) (quotations and citation omitted). "Massachusetts courts have required 'a pattern of harassment and intimidation' to support a finding of non-physical coercion under the MCRA." *Id.* at 493 (citation omitted). Plaintiff alleges no such pattern. Plaintiff's own recounting of his demotion clearly shows that Commissioner Cox did not harass or intimidate Plaintiff in any way, but simply informed Plaintiff that he needed to choose between serving on POST and serving on the Command Staff. *See* Compl. ¶¶ 42–47, 54. Indeed, in an email attached to Plaintiff's Complaint, Plaintiff tells Commissioner Cox that "the conversations [they] have had over the past several days have been *insightful, meaningful, and thought provoking*" and that he

"appreciate[s] the dialogue and [their] different perspectives." Compl. Ex. C, ECF No. 1-5 at 2 (emphasis added). A claim of harassment sufficient to satisfy the MCRA is not plausible in light of these allegations. *See also Mason v. Cent. Mass Transit Mgmt./Worcester Reg'l Transit Auth.*, 394 F. Supp. 3d 166, 174 (D. Mass. 2019) (holding that statement that employee must "resign or be fired" was not coercive under the MCRA and "simply highlighted Plaintiff's options"). In any case, because Commissioner Cox demoted Plaintiff and Plaintiff did not himself resign, there is no "action that [Plaintiff] took or did not take as a result of the alleged . . . coercion," which is fatal to his claim. *Stuart v. City of Gloucester*, No. 18-CV-11877-ADB, 2019 WL 3082830, at *12 (D. Mass. July 15, 2019).[2]

## V.    Plaintiff Received All the Process He Was Due

The Constitution provides procedural due process protections for demotion in the public employment context only where the public employee has a "property interest" in his role. The property interest must "stem from an independent source such as state law." *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (citation omitted). Here, Plaintiff identifies three sources of an alleged property interest in service on the Command Staff, all of which fail.[3] As a practical matter, Plaintiff's claim that he is entitled to a pre-demotion hearing makes no sense because members of the Command Staff are chosen in the sole discretion of the Commissioner.

First, Plaintiff identifies the "Fourteenth Amendment to the United States Constitution" as the source of his "right to notice and a formal hearing." Compl. ¶ 65. But "[p]roperty

---

[2]    Separately, the Count Two official capacity claim fails as a matter of law because "a municipality cannot be sued under the MCRA" and "[t]he MCRA claim against Defendant in his capacity as [commissioner of police] is clearly a claim against the city." *See, e.g.*, *Fletcher v. Szostkiewicz*, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (citation omitted).

[3]    Also relevant to this claim is Plaintiff's admission that Commissioner Cox gave him "an ultimatum to either resign from the command staff or the POST Commission, a decision I [Plaintiff] firmly believe is yours [Commissioner Cox's] to make." Compl. Ex. C, ECF 1-5 at 2.

interests are not created by the Constitution," and must be based in an "independent source." *Velez-Rivera*, 437 F.3d at 156. Second, Plaintiff identifies—in general—Chapter 31 of the Massachusetts General Laws, which governs the Commonwealth's civil service system and provides protections to those appointed or promoted following an examination. Compl. ¶ 65. However, Plaintiff has no civil service protections with respect to service on the Command Staff, since members of the Command Staff are appointed without examination, and Plaintiff provides no citation to any statute, regulation, or decisional law that would justify providing civil service protections to a member of the Command Staff, whom the Commissioner chooses in his sole discretion. Indeed, Chapter 739 of the Acts of 1964 specifies that:

> The police commissioner shall have authority to …determine the highest rank and next highest rank within said police and…shall appoint from said police, and as a part thereof, such number of officers of the highest rank, and next highest rank as he may from time to time deem proper. **The civil service laws and rules shall not apply to the appointment of such officers; nor shall said laws and rules apply to the removal of such an officer if, upon such removal, he is reinstated in the rank subject to said laws and rules held by him immediately prior to his appointment as such officer.**

1964 Mass. Acts 721 (emphasis added). Because plaintiff admits he was transferred back to the rank he held immediately prior to his appointment as deputy superintendent, *see* Compl. ¶ 47, Chapter 31 does not apply.[4]

Third, plaintiff identifies Boston Police Department Rule 109 as the source of his supposed "property interest" in his command staff role. Compl. ¶ 65. But Rule 109 is limited to "discipline," which is not the reason that Plaintiff proffers he was removed from the command staff. Moreover, by its own terms, Rule 109 is "designed strictly to be procedural in nature, and

---

[4]    In 1964, superintendent and deputy superintendent were the two highest ranking ranks in the BPD and constituted the command staff. Changes to the BPD organizational structure since 1964 have added the rank of superintendent-in-chief. However, because examinations are not required for appointment to deputy superintendent and civil service appointments include only original and promotional appointments made pursuant to examination (*see* Mass. Gen. Laws ch. 31, §§ 1, 6, 7, 56), BPD's deputy superintendents remain exempt from civil service laws.

is not meant to create new rights or duties not previously granted by law or contract." Boston, Mass., Police Dep't Rule 109, § 3 (Apr. 12, 1983). The only hearings listed in Rule 109 are those required by Chapter 31 of the Mass. Gen. Laws. And, as set forth above, Chapter 31 does not apply to the Command Staff. *Cf. Tie Qian v. Shinseki,* 747 F. Supp. 2d 1362, 1370 (S.D. Fla. 2010), *aff'd sub nom. Tie Qian v. Sec'y, Dep't of Veterans Affs.,* 432 F. App'x 808 (11th Cir. 2011) (VA medical staff bylaws did not create a property interest where they stated they "do not create any rights or liabilities not otherwise provided for in [ ] regulations or Federal law . . . "). *See generally Ziskend v. O'Leary*, 79 F. Supp. 2d 10, 14 (D. Mass. 2000) ("[p]ublic employees who do not possess tenure or civil service status do not have a right to notice or a hearing before discharge" (alteration in original)) (quoting *Ruggieri v. City of Somerville,* 10 Mass. App. Ct. 43, 45 (1980).

Even if Plaintiff could somehow show that he was entitled to a pre-demotion notice and hearing, his due process cause of action must be dismissed for another reason: "[a] procedural due process claim that does not 'allege the unavailability of constitutionally-adequate remedies under state law fails.'" *Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020) (citation omitted). Here, Plaintiff has not alleged anywhere that he has inadequate remedies under state law for the supposed failure to provide sufficient pre-demotion process. Furthermore, "where a state has provided reasonable remedies to rectify a legal error . . . due process has been provided[.]" *See generally Fusion Learning, Inc. v. Andover Sch. Comm*., 609 F. Supp. 3d 5, 15 (D. Mass. 2022) (citation omitted). Insofar as Plaintiff is correct that his employment is governed by Chapter 31, the civil service laws provide him with a more than adequate process to remedy the lack of a pre-demotion hearing. *See Hadfield*, 407 F.3d at 21. And even if Plaintiff *could be* deprived of a property interest outside of the civil service laws (meaning that he has no property interest to

begin with), there are other post-demotion remedies that are potentially available to him under state law: certiorari, declaratory judgment, and mandamus. *See Monahan v. Romney*, No. 06CV10921-NG, 2009 WL 10694327, at *11 (D. Mass. Sept. 3, 2009). There is therefore no claim for violation of his procedural due process rights. *See, e.g.*, *Fusion Learning, Inc.*, 609 F. Supp. 3d at 14–15 (no cause of action for deficient pre-deprivation process where state made available adequate post-deprivation process); *Manchester*, 2025 WL 1208717, at *10 (similar).

## VI.    Regardless, Qualified Immunity Applies

At the very least, Commissioner Cox is entitled to qualified immunity on all claims. "To prevent the unnecessary litigation of claims from which public officials are immune, immunity is to be resolved at the earliest possible stage in litigation." *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011); *see also Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (qualified immunity "can be raised and evaluated on a motion to dismiss"). As a government official, Commissioner Cox is "immune from damages claims unless" Plaintiff can show that "(1) [Commissioner Cox] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was 'clearly established at the time.'" *Eves v. LePage*, 927 F.3d 575, 582–83 (1st Cir. 2019) (en banc) (citation omitted).

As set forth above, Plaintiff's constitutional rights were not violated. Commissioner Cox is also entitled to qualified immunity because even *assuming* that his conduct was unlawful, such unlawfulness was not "clearly established at the time" of his actions. In order to survive the qualified immunity analysis, Plaintiff must demonstrate that "the law was sufficiently clear such that *every reasonable official* would understand that what he was doing is unlawful." *Id.* at 583 (internal quotations and citations omitted) (emphasis added). "[C]learly established law must define the right allegedly violated in a particularized sense so that the contours of the right are

clear to a reasonable official." *Id.* (internal quotations and citations omitted).  Liability requires that "existing precedent must have placed the . . . constitutional questions *beyond debate*" such that Commissioner Cox is protected if "it is 'at least arguable'" that his actions were constitutional. *Id.* (citations omitted) (emphasis added).  In sum, qualified immunity is "intended to protect all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations and citations omitted).  Although each count is analyzed below, one of the reasons that it would not have been "beyond doubt" to Commissioner Cox that his conduct was unlawful was because—according to the Complaint—Plaintiff himself told Commissioner Cox that removing him from the Command Staff was "**a decision I firmly believe is yours to make**." Compl. Ex. C, ECF No. 1-5 at 2 (emphasis added).

With respect to Counts 1 and 2, there are multiple constitutional questions that are not "beyond debate."  Chief among these is whether there is a novel constitutional right to *associate with* a government board or commission in the manner that Plaintiff pleads.  As set forth above, there is no such constitutional right.  But even if there were such a right, it is not "clearly" established. *See Roy v. Correct Case Solutions, LLC*, 914 F.3d 52, 73 (1st Cir. 2019) (granting qualified immunity from First Amendment retaliation claim because "[r]easonable officials in [defendants'] positions [ ] could have deemed [that plaintiff's] complaints [were] unprotected" speech).  Second, even if there was some associational right to serve on a government board, it is not "beyond debate" that Plaintiff, as a member of the Command Staff, is not involved in policy, and thus Commissioner Cox's action was lawful even if some First Amendment protection could attach to Plaintiff's POST service. *See Eves*, 927 F.3d at 584 (affirming dismissal based on qualified immunity where a reasonable official would not have concluded that "the policymaker exception was placed beyond doubt in [Plaintiff's] favor").

16

And finally, even if the right to associate *with* a government board was "clearly established" and it was "clearly established" that members of the command staff do not fit within the policy exception, it is certainly not "beyond debate" that, in the circumstances described in the Complaint, the *Pickering* balance favors Plaintiff. As the First Circuit has stated, "[b]ecause *Pickering*'s constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established' for purposes of qualified immunity." *Fabiano v. Hopkins*, 352 F.3d 447, 457 (1st Cir. 2003) (internal quotations and citations omitted); *Hussey v. City of Cambridge*, No. 21-CV-11868-AK, 2022 WL 6820717, at *7 (D. Mass. Oct. 11, 2022) (dismissing claim).

Finally, with respect to Count 3, Commissioner Cox is entitled to qualified immunity because Plaintiff did not have any property interest in his deputy superintendent position. *See* Section V, *supra*. A reasonable person in Commissioner Cox's position would not have thought that demoting Plaintiff violated his due process rights where, as here, Plaintiff's position as deputy superintendent was not subject to any civil service protections, and no other rule or law gives Plaintiff a property interest in service on the Command Staff. *See* Section V, *supra*. Accordingly, Commissioner Cox "could reasonably have concluded that [Plaintiff] did not have a property interest in his job[.]" *Duriex-Gauthier v. Lopez-Nieves*, 274 F.3d 4, 12 (1st Cir. 2001) (granting qualified immunity on due process claim for termination of plaintiff's government job).

\*\*\*

For the reasons set forth above, Defendant Michael A. Cox respectfully requests that the Court dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).

Dated: July 3, 2025

Respectfully submitted,

MICHAEL A. COX, individually and in his official capacity as Commissioner of the Boston Police Department,

By his attorney,

*/s/ Joshua C. Sharp*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1065
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com


**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed electronically on July 3, 2025 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").

*/s/ Joshua C. Sharp*
Joshua C. Sharp

4939-1671-6370.1