# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                       )
EDDY CHRISPIN,                         )
          *Plaintiff*,                 )
                                       )
v.                                     )
                                       )          Civil Action No. 1:25-cv-10793-ADB
MICHAEL A. COX, individually and in    )
his capacity as Commissioner of the    )
Boston Police Department,              )
          *Defendant*.                 )
_____)

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Eddy Chrispin hereby opposes Defendant's motion to dismiss his Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the Complaint more than adequately pleads actionable claims under both 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA").  While Defendant's motion previews certain factual and legal defenses that he intends to raise in this litigation, it is far too early to decide these issues at the Rule 12(b)(6) stage.

## FACTUAL BACKGROUND

This action concerns Mr. Chrispin's public expressions of support for the police reform movement and this state's first-ever police accountability commission, and the Boston Police Commissioner's official retaliation against him on account of that support.

Following widespread public protests after the murder of George Floyd in 2020, the Massachusetts Legislature passed, and Governor Charles D. Baker signed, police reform legislation known as "An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth" (the "Act").  2020 Mass. Acts, Chapter 253.  A key feature of the Act

was its creation of a new permanent state agency, the Massachusetts Peace Officer Standards and Training ("POST") Commission, to enhance accountability and transparency in policing.  Acts of 2020, Chapter 253, Section 30; codified at Mass. Gen. Laws c. 6E, § 1 *et seq.*   The creation of this new agency was a matter of intense lobbying, and prior to its enactment, Massachusetts was one of only a few remaining states that had heretofore resisted creation of such an agency.  *See* (Complaint, ¶ 31).

Because respect and support for the new agency from the law enforcement community is critical to its long-term effectiveness and credibility, POST's enabling legislation requires at least three of its nine commissioners to be law enforcement officers. Mass. Gen. Laws c. 6E, § 2. One is required to be a police chief.  *Id.*  Another is required to be a law enforcement officer below the rank of sergeant who is a labor union representative.  *Id.*  And another one of the POST commissioners, who is appointed by the state attorney general, is required to be "a law enforcement officer appointed from a list of 5 nominations submitted by the Massachusetts Association of Minority Law Enforcement Officers, Inc. ("MAMLEO")."  *Id.*  MAMLEO is an organization whose mission is to improve the recruitment, hiring, and career advancement of minority law enforcement candidates and officers.  (Complaint, ¶ 28).  After POST was created, it remained to be seen which law enforcement officers would step forward and agree to serve as commissioners on this new, statewide police accountability agency.

Mr. Chrispin is a Black Haitian man and 25-year veteran of the Boston Police Department ("BPD") who has, throughout his career, consistently advocated for increased transparency and accountability in policing.  *See* (*id.* ¶ 3).  He is also a longtime MAMLEO member who served as its president from 2019 to 2021, and was its chairman in 2024.  *See* (*id.* ¶ 28).

In the spring of 2024, MAMLEO submitted Mr. Chrispin's name to Attorney General Andrea Campbell for her consideration as a POST commissioner.  (*Id.* ¶ 4).  Following an interview and vetting process, Attorney General Campell chose to appoint him.  (*Id.*).  Mr. Chrispin was, at that time, a Deputy Superintendent at the BPD.  *See* (*id.* ¶ 36).  He accepted the appointment, and was sworn in as a POST Commissioner on May 24, 2024.  (*Id.* ¶ 4).

Although Mr. Chrispin's immediate supervisor, Superintendent-in-Chief Gregory Long, responded by congratulating him on his POST appointment, Mr. Chrispin later heard that BPD Commissioner Cox personally took issue with it.  *See* (*id.* ¶¶ 37-38).  On June 25, 2024, BPD Legal Advisor David Fredette called Mr. Chrispin and informed him that the Commissioner believed that his service on POST and his service on BPD's command staff posed a conflict of interest.  *See* (*id.* ¶ 40).  The Massachusetts Attorney General's Office and State Ethics Commission, however, responded that there was no such conflict because POST allows for recusal of commissioners in any matters relating to their departments, and Mr. Chrispin intended to do so.  *See* (*id.* ¶¶ 41-42).[1]

On June 27, 2024, Mr. Chrispin informed Commissioner Cox and Attorney Fredette of that fact.  (*Id.* ¶ 42).  He also spoke up in defense of his decision to associate with POST because it furthered his longstanding personal commitment to being a "change agent" and improving police relations with minority communities.  *See* (*id.*, Ex. B).  In response to Mr. Chrispin's speech in defense of POST, Commissioner Cox met with Mr. Chrispin in his office the following day, questioned the value of serving on POST, specifically questioned whether Mr. Chrispin would be acting as a MAMLEO representative on POST, and stated that he "can't serve two masters."  (*Id.* ¶ 43).  Commissioner Cox and Attorney Fredette then gave Mr. Chrispin an

---

[1]     The Act's requirement that one of the POST commissioners must be a police chief demonstrates that there is no *per se* conflict of interest in having a "command staff" officer serve as a commissioner.

ultimatum to either resign from POST or be "broken", i.e. stripped of rank.  (*Id.* ¶¶ 44, 45).

After Mr. Chrispin declined to resign from POST, Commissioner Cox issued an order demoting him from Deputy Superintendent to Sergeant Detective.  (*Id.* ¶ 47).  The order circulated within the entire BPD, which had the effect of publicly humiliating him and suggesting that he had engaged in some type of misconduct, when he had not.  (*Id.*)   Following his demotion, Mr. Chrispin also begin experiencing new problems with the BPD's handling of his pay and benefits.  (*Id.* ¶ 49).  Mr. Chrispin was also reassigned to a Charlestown district that is less busy, and has fewer opportunities for community engagement.  (*Id.* ¶ 50).  The demotion has also caused a reduction in Mr. Chrispin's salary, benefits, and the level of benefits for which he can be eligible upon retirement.  (*Id.* ¶ 48).

On April 3, 2025, Mr. Chrispin filed this action alleging that Commissioner Cox violated 42 U.S.C. § 1983 and MCRA by unlawfully retaliating against him for exercising his protected First Amendment rights to freedom of speech and association.  He now opposes Commissioner Cox's Rule 12(b)(6) motion to dismiss because, for the reasons set forth below, his Complaint adequately pleads actionable claims under both statutes.[2]

## ARGUMENT

I.    THE COMPLAINT ADEQUATELY PLEADS AN ACTIONABLE CLAIM FOR FIRST AMENDMENT RETALIATION IN VIOLATION OF 28 U.S.C. § 1983.

When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pled facts alleged in the Complaint and draw all reasonable inferences in favor of the non-moving party.  *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013).  With narrow exceptions, the Court's review is limited to the facts alleged in the complaint and exhibits attached thereto.  *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st

---

[2]    Plaintiff does not oppose the motion to dismiss the procedural due process claim at Count III.

Cir. 2013).  The Court's focus is on the sufficiency of the pleadings, not a forecast of plaintiff's ultimate likelihood of success on the merits.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011).

Count I of the Complaint alleges that Commissioner Cox unlawfully retaliated against Mr. Chrispin for exercising his protected First Amendment rights of free speech and free association.  "Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (citing *Connick v. Myers,* 461 U.S. 138, 142 (1983)).  The First Circuit has developed a three-part test to determine whether an adverse employment action against a public employee violates his or her First Amendment rights.

> First, a court must determine whether the employee spoke as a citizen on a matter of public concern. Second, the court must balance the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, the employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision.

*Decotiis v. Whittemore*, 635 F.3d 22, 29–30 (1st Cir. 2011).  The Court should deny Defendant's motion because the Complaint adequately pleads facts establishing each of those elements.

      a.   The Complaint Sufficiently Pleads That Commissioner Cox Retaliated Against Mr. Chrispin For Exercising Protected Rights of Free Speech.

Commissioner Cox challenges whether Mr. Chrispin engaged in any protected speech or association at all.  Defendant's argument fails for the following reasons.

*First*, Mr. Chrispin's acceptance of the POST appointment was an expressive act that qualified as symbolic speech protected under the First Amendment. Defendant defines speech too narrowly and overlooks that "[t]he First Amendment affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003);

*see, e.g., Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995) (parade marching is protected "speech"); *Texas v. Johnson*, 491 U.S. 397, 406 (1989) (flag burning is protected "speech"). Conduct may be protected as an expressive act when it was "intended to be communicative" and whether it "in context, would reasonably be understood by the viewer to be communicative." *Hernández-Gotay v. United States*, 985 F.3d 71, 80 (1st Cir. 2021).

Here, Mr. Chrispin's Complaint expressly alleges that his acceptance of the POST appointment, and his subsequent defense of that appointment to BPD leadership, was intended to communicate his deeply-held support for the police reform movement. *See* (Complaint, ¶ 8) ("Mr. Chrispin's decision to accept the Attorney General's appointment as POST commissioner – an appointment that Mr. Chrispin accepted because it advanced his lifelong commitment to police reform and better police-community relations in Boston – was a constitutionally protected expression of his right to free speech and free association.") And Mr. Chrispin's June 27, 2024 email to Commissioner Cox conveyed a similar view. He explained his commitment to being a "change agent" and a "catalyst for change" in policing, and stated that "[b]eing a member of the POST Commission not only allows me to weigh in on cases of certification or decertification, but also to enlighten Commission members on matters of policing that can only come from firsthand experience in the field, and my lived experience as an immigrant, black man." *See* (*id.*, Ex. B). Viewing the facts in the light most favorable to plaintiff, as the Court must at this early stage of the litigation, the Complaint adequately pleads that Mr. Chrispin's acceptance of the POST appointment was an expressive act of symbolic speech protected under the First Amendment.

*Second*, Defendant's motion overlooks that Mr. Chrispin did indeed engage in actual

speech by accepting the POST appointment and then defending it to others at BPD. After Attorney General Campbell nominated Mr. Chrispin for POST, he responded "yes" by being sworn in as a POST commissioner on May 24, 2024.  *See* (*id.* ¶ 33, 35).  And after Commissioner Cox questioned his decision to accept that appointment, Mr. Chrispin spoke up in conversation with BPD Legal Advisor David Fredette to defend himself and communicate his view that active service in a command position within a police department was not incompatible with active service on the POST Commission.  (*Id.* ¶ 40).  Moreover, as referenced above, Mr. Chrispin spoke up to the Commissioner again in the June 27, 2024 and July 2, 2024 emails attached to Exhibits B and C to the Complaint, stating that his service as a POST commissioner was part and parcel of his personal dedication to police reform and "being a catalyst for change. . . ."  (*Id.*, Exs. B & C).  Defendant is simply incorrect to state that the Complaint does not identify speech by Mr. Chrispin that prompted the retaliatory demotion.

    *Third*, the First Amendment also protects public employees against retaliation "for *perceived* speech that they do not engage in."  *See DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) (cited at page 3 of defendants' motion).  As Mr. Chrispin stated in his June 27, 2024 email to Commissioner Cox, going forward in his role as a POST Commissioner, he would have the opportunity to "enlighten Commission members on matters of policing that can only come from firsthand experience in the field, and my lived experience as an immigrant, black man." (Complaint, Ex. B).  Viewing the facts in the light most favorable to plaintiff, a rational factfinder could infer that Commissioner Cox demoted Mr. Chrispin in an attempt to punish or deter him from expressing such views to the POST Commission in the future.

    In sum, the Complaint more than adequately identifies symbolic speech, actual speech, and perceived speech by Mr. Chrispin on matters of public concern immediately preceding his

July 3, 2024 demotion by the Commissioner.[3]

      b.   The Complaint Sufficiently Pleads That Commissioner Cox Retaliated Against Mr. Chrispin For Exercising Protected Rights of Free Association.

"The public employee surely can associate and speak freely and petition openly, and [she] is protected by the First Amendment from retaliation for doing so." *Mullen v. Tiverton School District*, 504 F. Supp. 3d 21, 30 (D.R.I. 2020) (quoting *Smith v. Arkansas State Highway Empl., Local 1315*, 441 U.S. 463, 465 (1979)) (denying motion to dismiss). Public employee retaliation claims based upon expressive association are subject to the same legal tests as retaliation claims based upon speech. *See e.g. Davignon v. Hodgson*, 524 F.3d 91, 108 (1st Cir. 2008); *Broderick v. Roache*, 767 F. Supp. 20, 25 n.9 (D. Mass. 1991). Accordingly, Mr. Chrispin's freedom of association claim survives the motion to dismiss for largely the same reasons as articulated above. *Supra* at 5-7.

Defendant argues, however, that Mr. Chrispin's association claim stands on a different footing, and fails to state a claim, because the First Amendment does not protect his association with POST in that same way that it would protect his association with a private organization. Defendant fails to identify a case directly standing for that proposition; the authorities cited at pages 4-5 of Defendant's brief are inapposite. The *Chernov v. City of Hollywood* case concerned a personnel director who was terminated by the city manager after he wrote and attempted to speak to the mayor and city commissioner to oppose the city commission's proposal to downgrade his position and reduce his salary. 819 F. Supp. 1070, 1972 (S.D. Fla. 1993). In granting summary judgment for the city, the district court held that plaintiff's claims were speech claims, not association claims, and were barred because plaintiff did not speak on a matter of

---

[3]     Defendant does not contest that Mr. Chrispin's acceptance of the POST appointment and his comments in defense of POST were undertaken as a citizen and related to a matter of "public concern."

"public concern." *Id.* at 1073-74.[4]  The unreported *Paiva v. Coyne-Fague* decision is also irrelevant; it concerned an inmate's claim challenging the constitutionality of a policy that charged him five cents per page for photocopies of documents that he requested from the corrections department.  No 21-1746, 2022 WL 2915696, *1 (1st Cir. 2022).

Defendant then cites *Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45, 55 (D.D.C. 2006) for the proposition that there is no protected right to associate with a government board because "the First Amendment offers no protection against compelled association with government actors or the government itself."  (Docket No. 11 at 5).  *Avocados Plus Inc.* concerned a federal statute requiring an avocado importer to join an industry board administering a generic marketing campaign financed by a per-pound assessment on avocados.  421 F. Supp. 2d at 47.  It is part of a line of "compelled-subsidy cases," which consistently hold that "compelled funding of government speech does not alone raise First Amendment concerns."  *See Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 559 (2005).  *Avocados Plus Inc.* is inapposite and irrelevant.  It does not provide this Court with any support for the proposition that the First Amendment does not protect Mr. Chrispin's association with POST and the like-minded individuals serving with him on that commission.[5]

Defendant's motion also overlooks that during his June 28, 2024 meeting with Mr. Chrispin, Commissioner Cox asked whether he was acting as a MAMLEO representative on POST, and stated that he "can't serve two masters."  (Complaint, ¶ 43).  Viewing the facts in the light most favorable to the plaintiff, a rational factfinder could infer that Commissioner Cox bore

---

[4]       In contrast here, Defendant does not contest that the speech in question related to a "public concern."

[5]       While Defendant argues that the First Amendment protects freedom of association with individuals but not with the state, a reasonable factfinder could conclude that the Complaint pleads a claim based not only upon Mr. Chrispin's association with POST, but also with the other like-minded individuals who similarly chose to serve on the Commonwealth's first-ever police accountability commission.

animus against MAMLEO, and was motivated to demote Mr. Chrispin based upon his perceived affiliation as a "MAMLEO representative" on POST.

In sum, the Complaint adequately pleads that Mr. Chrispin engaged in speech and association that is protected by the First Amendment, and that he was demoted in retaliation for that protected speech and association.

c.  It Is Premature For The Court To Decide How The *Pickering* Balancing Test Applies To This Case.

After establishing that the public employee engaged in speech or association protected by the First Amendment, the Court next considers the so-called *Pickering* balancing test. This calls upon the Court to "balance the value of an employee's speech—both the employee's own interests and the public's interest in the information the employee seeks to impart—against the employer's legitimate government interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission." *Decotiis*, 635 F.3d at 35 (internal quotations omitted); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Courts consistently hold that the *Pickering* balancing test is too fact-sensitive to be decided at the Rule 12(b)(6) stage. *See Dusenberry v. Massachusetts*, 676 F. Supp. 3d 50, 52 (D. Mass. 2023) ("*Pickering* balancing . . . requires a fact specific balancing test that is not appropriate at this stage where mere allegations are taken as true."); *Hayes v. IXP Corp.*, No. 19-12042-WGY, 2020 WL 30424, at *1 (D. Mass. Jan. 2, 2020) (ditto); *Greco v. City of New York*, 686 F. Supp. 3d 191, 200 (E.D.N.Y. 2023) ("Here, on this undeveloped record, the Court cannot readily discern every interest at play in this case, or how those interests weigh against one another."); *see also Riley v. City of Boston*, No. 24-cv-11314-ADB, 2025 WL 1150744, at *9 (D. Mass. Apr. 18, 2025) (denying Rule 12(b)(6) motion and stating that, given "public interest in the speech", plaintiff's motives for the speech, and the "low probability that the [speech] would

10

disrupt Defendants' operations", plaintiff's speech "at this stage, easily survives the *Pickering* balancing test"). *Picking* balancing demands "a hard look at the facts of the case, including the nature of the employment and the context in which the employee spoke." *MacRae v. Mattos*, 106 F.4th 122, 136 (1st Cir. 2024) (quoting *Decotiis*, 635 F.3d at 35). "In assessing the government's interest in allaying disruption and inefficiencies in the workplace, a court should include in its considerations (1) 'the time, place, and manner of the employee's speech,' and (2) 'the employer's motivation in making the adverse employment decision.'" *Decotiis*, 635 F.3d at 35 (quoting *Davignon*, 524 F.3d at 104). These are fact-sensitive inquiries that cannot be adjudicated based solely on the pleadings.

Defendant first argues, based upon *Foote v. Town of Bedford*, 642 F.3d 80 (1st Cir. 2011) and *Flynn v. City of Boston*, 140 F.3d 42 (1st Cir. 1998), that the *Pickering* balancing test favors him as a matter of law based solely upon Mr. Chrispin's position at the time of his demotion. *See* (Docket No. 11 at 6-7). Significantly, both cases were decided on summary judgment. Defendant cites no authority deciding the "policymaker" issue at the Rule 12(b)(6) stage.[6] "As the Supreme Court has noted on several occasions, the nature of the job held by the plaintiff-employee plays a significant, *but not dispositive*, role in the *Pickering* balance." *McEvoy v. Spencer*, 124 F.3d 92, 102 (2nd Cir. 1997) (emphasis added). "[N]o dispositive policymaker exception exists in the *Pickering* balancing test." *Id.* at 105.

The determination of whether a particular position is "policymaking in nature," and whether the speech prompting the adverse employment action "was policy related," is "*both* position-specific and speech-specific." *Foote*, 642 F.3d at 85 (emphasis added). With respect to the "position-specific" prong, "a high-sounding title" is not alone dispositive; the court needs to

---

[6]    *Hadfield v. McDonough*, cited at page 7 of Defendant's brief, was also decided at the summary judgment stage. 407 F.3d 11, 13 (1st Cir. 2005).

examine the plaintiff's actual duties.  See *Flynn*, 140 F.3d at 45 (citing *De Choudens v. Government Dev. Bank of Puerto Rico*, 801 F.2d 5, 9-10 (1st Cir. 1986)).   Here, there is nothing in the record concerning Mr. Chrispin's actual duties as Deputy Superintendent, and whether he was entrusted with "major responsibilities" similar to those presented in *Flynn*.  *See* 140 F.3d at 45.  As the moving party, it would be the Commissioner's burden to demonstrate what those "major responsibilities" are, and he fails to do so.  Mr. Chrispin expects the evidence to show that, during the relevant time period: the Commissioner's "command staff" did not have a *bona fide* policymaking role; he served three levels below the Commissioner; the "command staff" consisted of not less than twenty-eight (28) individual officers; and there were at least fifteen (15) separate Deputy Superintendents.  Viewing the facts in the light most favorable to plaintiff, it is premature to decide whether Mr. Chrispin's position was policymaking in nature.

With respect to the "speech-specific" prong, *Foote* instructs that the court must "ask whether the speech in question fairly can be said to conflict with the appointing authority's stated policies on matters relating to the [department]'s work."  642 F.3d at 86.  Where the employee's speech consists of vocal disagreement concerning the appointing authority's stated policy goals and objectives for the department, the government has an interest in permitting the appointing authority to terminate or demote that employee to ensure that "policymakers sign from the same sheet music" as their subordinates.  *See id.* at 85, 86.  For example, summary judgment may be appropriate where the employee publicly expresses "overt acts of disloyalty" concerning how to run the department.  *See e.g. Rose v. Stephens*, 291 F.3d 917, 923 (6th Cir. 2022) (granting summary judgment for a state cabinet secretary who terminated state police commissioner after he refused to withdraw a recommendation to the governor that he eliminate a deputy police commissioner position); *Foote*, 642 F.3d at 81 (granting summary judgment for a town council

that refused to reappoint a recreation commission member who publicly criticized the town council's policies).

Here, Mr. Chrispin's speech did not involve disagreement with any of Commissioner Cox's policy goals. BPD had a stated goal to "maximize accountability, transparency and public access to BPD." *See* (Complaint, ¶ 29). Service on POST is consistent with that goal. Moreover, because Mr. Chrispin pledged to recuse himself from any POST actions concerning BPD, his POST service would not directly impact BPD in any way at all. *See* (*id.* ¶ 42).[7] Accordingly, Defendant cannot establish at this early juncture in the litigation that either the "position-specific" or "speech-specific" aspects of the "policymaker" determination are satisfied here. See *Foote*, 642 F.3d at 85 (emphasis added).

This Court should also reject Defendant's suggestion that this case is analogous to *Manchester v. Town of Ludlow*, a rare case where a district court decided the *Pickering* balancing test at the pleadings stage. No. 23-30117-MGM, 2025 WL 1208717, at *6 n.7 (D. Mass. 2025). *Manchester* is easily distinguished because it involved admitted insubordination by the plaintiff. 2025 WL 1208717, at *7; *see Elrod v. Burns*, 427 U.S. 347 (1976) ("employees may always be discharged for good cause, such as insubordination or poor job performance, when those bases in fact exist"). The plaintiff was a public school teacher interacting with a sixth-grader who began questioning her gender identity. *Id.* at *1. The school's guidance counselor asked plaintiff to adhere to the student's request that she be addressed by alternate pronouns, but that plaintiff continue using she/her pronouns when communicating with the student's parents about her. *Id.* at *2. The plaintiff intentionally disregarded those instructions and informed the student's father about his child's use of alternate pronouns at school. *Id.* at *3. Plaintiff alleged that she did so

---

[7]    Throughout his brief, Defendant conveniently ignores Mr. Chrispin's pledge to recuse himself from any POST action concerning BPD.

to prevent a "grave moral wrong" and avoid setting an "immoral example." *Id.* at \*7.  In its decision granting the school's motion to dismiss, the district court held that the school's strong interest in preventing insubordination as a matter of law outweighed the plaintiff's First Amendment rights. *Id.*[8]  *Manchester* bears no remote resemblance to this case, in which there is no allegation of insubordination by the plaintiff.

In sum, this is not one of those very rare cases where *Pickering* balancing can be decided at the Rule 12(b)(6) stage.  This case should proceed into discovery so that these issues can later be adjudicated on a more complete factual record.  For all the foregoing reasons, the Court must deny Defendant's motion to dismiss Count I of the Complaint alleging First Amendment retaliation in violation of 42 U.S.C. § 1983.

## II.   THE COMPLAINT ADEQUATELY PLEADS AN ACTIONABLE CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.

MCRA provides a cause of action where "any person or persons . . . interfere [or attempt to interfere] by threats, intimidation or coercion . . . with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States . . . ." Mass. Gen. Laws c. 12, § 11H(a)(1).  For the reasons set forth above, the Complaint sufficiently alleges that Commissioner Cox retaliated against Mr. Chrispin for exercising constitutionally protected rights.  *Supra* at 5-10.

The Complaint also sufficiently alleges that Defendant used, or attempted to use, "threatens, intimidation or coercion" to chill Mr. Chrispin's protected speech and association.  For purposes of MCRA, "threat" involves "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994).  "'Intimidation' involves putting in fear for the purpose of

---

[8]      The *Manchester* plaintiff is appealing that decision.  First Circuit Case No. 25-1502.

compelling or deterring conduct." *Id.* "Coercion" involves "the application to another of such force, either physical *or moral*, as to constrain him to do against his will something he would not otherwise have done." *Id.* (quoting *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989) ("the active domination of another's will") (emphasis added)). In *LeBeau v. Town of Spencer*, the court held that police officers presented a trial-worthy claim concerning whether their employer applied "moral coercion" so as to violate MCRA in removing them from their positions. 167 F.Supp.2d 449, 455 (D. Mass. 2001).

Physical confrontation between the parties "is not required to make out a MCRA violation." *Broderick v. Roache*, 803 F. Supp. 480, 486–87 (D. Mass. 1992) (denying defendant's motion for summary judgment). "Threats, intimidation, or coercion" under MCRA can include "violations of plaintiffs' rights that may not be overtly harmful or frightening." *Reproductive Rights Network v. President of Univ. of Mass.*, 45 Mass. App. Ct. 495, 507 (1998). "[I]n certain circumstances, economic coercion, standing alone, may be actionable under [MCRA]." *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003). And as Defendant acknowledges, plaintiff may establish MCRA liability through evidence of a "pattern of harassment and intimidation in an attempt to suppress . . . free speech rights." *Howcroft v. City of Peabody*, 91 Mass. App. Ct. 573, 594 (2001) (reversing grant of summary judgment to defendant on MCRA claim).

At this early stage in the litigation, Mr. Chrispin pleads facts plausibly suggesting that Commissioner Cox, and others at the BPD acting in concert with him, engaged in such a pattern. In addition to the coercive and intimidating threat that Mr. Chrispin would be "broken" if he did not quit POST and the Commissioner's comments about "serving two masters", Mr. Chrispin also began experiencing new problems with the handling of his pay and benefits immediately

following the demotion order.  *See* (Complaint, ¶¶ 43, 45, 49).   For example, Mr. Chrispin had

arranged to use comp time prior to his demotion, but then was told after his demotion that he was

no longer eligible for any comp time, even if he had already accrued it in the bank.  (*Id.* ¶ 49).

Mr. Chrispin was also re-assigned from the Boston Police Academy to a district that is less busy

and given fewer opportunities for community engagement and career advancement.  (*Id.*)

Drawing all reasonable inferences in Mr. Chrispin's favor at this stage of the litigation, a

reasonable factfinder would find that Defendant engaged in a pattern of harassment and

intimidation to coerce Mr. Chrispin into discontinuing his continued support for POST and

police accountability more broadly.  *See e.g.*, *Oliveira v. Ellison-Lopes*, No. 23-cv-10647-DJC,

2024 WL 126178, at *7 (D. Mass. 2024) (denying Rule 12(b)(6) motion to dismiss MCRA

claim).

## III.    IT IS PREMATURE TO DECIDE DEFENDANT'S QUALIFIED IMMUNITY DEFENSE.

"'[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a

procedural mismatch,' and the court will often lack the "robust factual record" it needs to decide

whether an official is entitled to qualified immunity at this stage . . . ."  *Jakuttis v. Town of*

*Dracut, Massachusetts*, 656 F. Supp. 3d 302, 318-19 (D. Mass. 2023) (quoting *Chamberlain Est.*

*of Chamberlain* v. *City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020)).  This is because, at

the Rule 12(b)(6) stage, the Complaint's well-pleaded factual allegations must be accepted as

true, and all reasonable inferences drawn in favor of the plaintiff.  *See Dusenberry*, 676 F. Supp.

3d at 52 ("it would be premature to weigh mere allegations to determine whether a First

Amendment right was clearly established for the purposes of qualified immunity").  Qualified

immunity is an affirmative defense on which the defendant bears the burden of proof.  The First

Circuit has even cautioned against grants of qualified immunity on summary judgment if

16

material facts remain in dispute.  *See Morelli v. Webster,* 552 F.3d 12, 18-19 (1st Cir. 2009);

*Kelley v. LaForce,* 288 F.3d 1, 7 (1st Cir. 2002).

To assess whether a government official is entitled to qualified immunity, "courts ask (1)

whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at

issue was "clearly established" at the time of the alleged violation."  *Estate of Rahim by Rahim v.*

*Doe*, 51 F.4th 402, 410 (1st Cir. 2022).  For the reasons discussed above, the Complaint

adequately alleges that Defendant violated Mr. Chrispin's constitutional rights.  *Supra* at 5-10.

With respect to the "clearly established" prong, "[i]t is well-established that individuals

do not forfeit their First Amendment right to free speech by virtue of their employment with the

government."  *Parks v. City of Brewer*, 56 F. Supp. 2d 89, 95 (D. Me. 1999); *see Connick*, 461

U.S. at 142.  The Supreme Court "has frequently reaffirmed that speech on public issues

occupies the 'highest rung of the heirarchy of First Amendment values,' and is entitled to special

protection."  *Connick v. Myers*, 461 U.S. 138, 145 (1983).  There is no dispute here that police

reform and police accountability, the subject matter of Mr. Chrispin's challenged speech,

qualified as matters of public concern.  Defendant's qualified immunity analysis is flawed

because it ignores Mr. Chrispin's free speech claims entirely, focusing exclusively on Mr.

Chrispin's free association claims.  *See* (Docket No. 11 at 16-17).

Commissioner Cox argues that Mr. Chrispin's First Amendment rights were not "clearly

established" because plaintiff was a policymaker.  (*Id.* at 16).  For the reasons set forth above, in

the absence of any evidence concerning Mr. Chrispin's actual duties and responsibilities as

Deputy Superintendent, this Court cannot decide whether plaintiff qualified as a policymaker.

*See supra* at 11-12.  Mr. Chrispin expects the evidence to show that the "command staff"

involved no real policymaking, and that his speech in favor of POST involved no opposition to

the Commissioner Cox's stated policies.  *Supra* at 12-13.

Defendant next argues that Mr. Chrispin's First Amendment rights were not "clearly established" because the *Pickering* balancing test weighs in the Commissioner's favor.  *See* (Docket No. 11 at 17).  Because of the fact-sensitive nature of *Pickering*, it is premature to determine whether plaintiff's rights were "clearly established" for purposes of qualified immunity.  *See Dusenberry*, 676 F. Supp. 3d at 52 ("it would be premature to weigh mere allegations to determine whether a First Amendment right was clearly established for the purposes of qualified immunity"; Rule 12(b)(6) motion denied); *see also Riley*, 2025 WL 1150744, at *9 (denying Rule 12(b)(6) motion and rejecting defendant's argument that First Amendment retaliation claim was barred by qualified immunity based solely on the pleadings); *Stuart v. City of Gloucester*, No. 18-cv-11877-ADB, 2019 WL 3082830, at *11 (D. Mass. July 15, 2019) (ditto).

Qualified immunity based upon the *Pickering* test involves instances "where substantial disruption has been shown to exist as a basis for the discharge."  *O'Connor v. Steeves*, 994 F.2d 905, 917 n.11 (1st Cir. 1993) (quoting *Bartlett v. Fisher*, 972 F.2d 911, 916-17 (8th Cir. 1992)). "[I]n the absence of disruption, a reasonable public official should know that retaliation is unjustified because there is nothing on the *Pickering* scale to outweigh the employee's speech on a matter of public concern."  *Parks*, 56 F. Supp. 2d 89, 101 (D. Me. 1999) (denying summary judgment to city on First Amendment retaliation claim filed by former city manager).  "[A]n employer's prediction of disruption must be reasonable based upon the record."  *MacRae*, 106 F.4th at 138.  Here, Commissioner Cox's speculation that disruption at the command staff would result from Mr. Chrispin's POST service is unreasonable and unsupported by the record because Mr. Chrispin pledged to recuse himself from any POST actions involving BPD.  *See* (Complaint,

¶ 42).

Relatedly, "an officer is not entitled to qualified immunity if they act in 'bad faith or [with] malice.'" *Rizzuti v. Cappabianca*, No. 4:22-cv-40094-MRG, 2025 WL 2022125, at *33 (D. Mass. 2025) (quoting *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 144 (1st Cir. 2016)).  Viewing the facts in the light most favorable to the non-moving party, a rational factfinder could infer that Defendant acted in bad faith by offering shifting and contradictory explanations for the demotion – first focusing on an alleged conflict of interest under the state ethics laws, *see* (Complaint, ¶¶ 40, 41), before shifting to the current theory that Mr. Chrispin's service on the BPD command staff might somehow interfere with the Commissioner's discretion in making sensitive decisions about potential disciplinary referrals to POST, *see* (Docket No. 11 at 8) – as a pretext for unlawful retaliation.  *See E.C. Waste, Inc. v. N.L.R.B.*, 359 F.3d 36, 44 (1st Cir. 2004) ("an employer's shifting explanations for discharging an employee may themselves serve either to ground or to reinforce a finding of pretext").  Defendant's persistent disregard for Mr. Chrispin's pledge to recuse himself from any POST actions regarding BPD is further evidence that Defendant's conflict of interest rationale for the demotion is insubstantial and advanced in bad faith.  The fact that POST's enabling statue requires that at least one commissioner be a police chief (in this case, Framingham Police Chief Lester Baker) further highlights the bad faith nature of Defendant's suggestion that service in the BPD command staff and service on POST are fundamentally incompatible.  *See* (Complaint, ¶ 40).  A rational factfinder could conclude that Commissioner Cox's decision to demote Mr. Chrispin was motivated by a desire to undermine POST and deter others in BPD from supporting it.

Finally, Plaintiff notes that qualified immunity does not apply to requests for equitable relief.  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (recognizing that qualified immunity does

not apply in § 1983 actions seeking only injunctive relief);  *Lugo v. Alvarado*, 819 F.2d 5, 6–7 (1st Cir. 1987) (holding qualified immunity "totally immaterial" to equitable claims such as reinstatement); *Boston Taxi Owners Ass'n v. City of Boston*, 187 F. Supp. 3d 339, 341–42 (D. Mass. 2016) (noting qualified immunity "applies only to claims for money damages" and did not bar proceedings on equitable claims); *Battista v. Clarke*, 645 F.3d 449, 451 (1st Cir. 2011) (holding qualified immunity inapplicable because the suit sought only injunctive relief); *Remus-Milan v. Irizarry-Pagan*, 81 F. Supp. 3d 174, 180 (D.P.R. 2015) (rejecting qualified immunity defense as to reinstatement and declaratory relief); *Integrated Facilities Constr. Corp. v. Commonwealth*, 615 F. Supp. 3d 28, 38 (D. Mass. 2022) (confirming that qualified immunity applies to damages but not to declaratory or injunctive relief).  Accordingly, Mr. Chrispin's request for an order reinstating him to his former position as BPD Deputy Superintendent is not impacted by Defendant's qualified immunity arguments.  *See* (Complaint at p. 14).

<u>CONCLUSION</u>

For all the foregoing reasons, this Court should **<u>DENY</u>** the motion to dismiss.

Respectfully submitted,

EDDY CHRISPIN,

By his attorneys,

*/s/ Andrew R. Dennington*

_____
Andrew R. Dennington (BBO # 666892)
Joseph B. Hernandez (BBO # 704223)
CONN KAVANAUGH ROSENTHAL PEISCH &
FORD, LLP
One Federal Street, 15th Floor
Boston, MA 02110
(617) 482-8200
adennington@connkavanaugh.com
jbhernandez@connkavanaugh.com

and

*/s/ Sophia L. Hall*

_____
Sophia L. Hall (BBO # 684541)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Floor 5
Boston, MA 02110
(617) 482-1145
shall@lawyersforcivilrights.com

Dated: July 31, 2025

4911-4543-5736, v. 4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed electronically on July 31, 2025 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").

<u>/s/ Andrew R. Dennington</u>
Andrew R. Dennington (BBO # 666892)

4911-4543-5736, v. 4