UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDDY CHRISPIN,<br>    *Plaintiff*,<br><br>v.<br><br>MICHAEL A. COX, individually and in his official capacity as Commissioner of the Boston Police Department,<br>    *Defendant.* | No. 1:25-cv-10793-ADB |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiff has taken the highly unusual step of abandoning one third of his Complaint. *See* Opp. at 4 n.2 (stating that Plaintiff "does not oppose the motion to dismiss the procedural due process claim at Count III"). Presumably, upon reading the Motion to Dismiss, Plaintiff realized that his procedural due process claim was legally indefensible. For the reasons set forth below and in the Motion to Dismiss, the remaining counts (substantive due process and Mass. Civil Rights Act) are also legally indefensible and should be dismissed pursuant to Rule 12(b)(6).

## I. The Complaint Does Not Plausibly Allege That Plaintiff Was Demoted For Speech.

The Opposition goes to great lengths to distance itself from what Plaintiff actually pleaded in his complaint. Notably, the Opposition argues that this case is about retaliation for Plaintiff's "public expressions of support for the police reform movement." Opp. at 1. But that is not what Plaintiff pleaded. The Complaint notes that "[d]uring his 25-year career at BPD, [Plaintiff] has [ ] been a vocal and outspoken advocate for increased transparency and accountability," "has been a longtime member of [the Massachusetts Association of Minority Law Enforcement Officers]" and has "played an active and leading role in initiating and guiding public conversations about police reform in Boston." Compl. ¶¶ 26, 28–29. The Complaint states that concurrently with this outspoken activism, he has received "successive promotions within the BPD," including an appointment to the Command Staff during or after his MAMLEO presidency. *Id.* ¶¶ 6, 24, 28. The Complaint shows that Plaintiff was rewarded for his activism and speech in support of police reform; it does not plausibly allege that he was demoted for that reason. Indeed, the Opposition now makes the striking admission that "Mr. Chrispin's speech did not involve disagreement with any of Commissioner Cox's policy goals," further undermining his argument that Commissioner Cox demoted him for his support of police reform. Opp. at 13.

1

The Complaint itself articulates precisely why Plaintiff believes he was demoted: Commissioner Cox engaged in "Retaliation Against Plaintiff On Account Of His POST *Appointment*," Compl. at 8 (emphasis added), and Plaintiff believes that his "*decision* to accept the Attorney General's appointment as a POST commissioner . . . was [ ] constitutionally protected expression." Compl. ¶ 8 (emphasis added). But service on POST—as opposed to advocacy for police reform— is not "speech." And any possible argument that Plaintiff's support for police reform was the cause of his demotion is belied by Plaintiff's own admission that Commissioner Cox would allow Plaintiff to remain on the command staff if he declined the POST appointment. *Id.* ¶ 44.

The Opposition's other "speech" arguments can be dispatched quickly. Plaintiff argues, for instance, that he said the word "yes" when accepting a POST appointment and therefore engaged in constitutionally protected speech. Opp. at 7. Whether "yes" is protected by the First Amendment in this context is beside the point; what matters is that the Complaint plausibly alleges that Plaintiff was demoted only because of his service on POST and not for his speech in support of police reform. The Opposition also tries to re-write the Complaint by arguing that it was Plaintiff's "subsequent defense of [his POST] appointment to BPD leadership," including in emails attached to the Complaint, that caused his demotion. Opp. at 6. This theory, however, is foreclosed by the Complaint's allegation that it was the "decision" to accept the POST appointment that caused the retaliation. The timeline also makes no sense, as the Complaint shows that Plaintiff was informed of the BPD's concerns and the forthcoming demotion *prior to* defending his POST appointment. *See* Compl. ¶¶ 38–47.

Plaintiff likewise argues that his acceptance of the POST appointment was an "expressive act that qualified as symbolic speech," citing to the flag burning case, among others. Opp. at 5.

2

The argument suffers from two infirmities: first, accepting a government post is not "communicative" in the same way that flag burning is (and Plaintiff cites no remotely analogous case). Second, what was communicated by accepting such position? If what was communicated was that Plaintiff supported police reform, his Complaint still fails because, in light of the detailed allegations in the complaint, there is no plausible claim that Plaintiff was demoted because of his activism rather than the act of service on POST. Finally, Plaintiff argues that he was fired "for *perceived* speech that [he did] not engage in," Opp. at 7, but the case he cites—and the doctrine to which he refers—is about a *mistaken* belief in the identity of a speaker, not "future" speech that has not occurred. See *DeCrane v. Eckart,* 12 F.4th 586, 594 (6th Cir. 2021).

## II. Plaintiff Fails to Cite a Single Case Suggesting "Freedom of Association" Protects the Right to Associate with the State.

Plaintiff fails to cite *even a single case* supporting his novel argument that freedom of association includes the right to associate *with the state* by joining a state body. Plaintiff sidesteps this glaring deficiency by attempting to distinguish some (but not all) of Defendant's authority. Notably, he declines to engage with, or even mention, the Supreme Court authority cited in the Motion to Dismiss. But the Supreme Court precedent explains the contours of the associational right and why it simply does not make sense for that right to encompass association with a state commission like POST. That is: associational rights protect individuals "from unjustified interference *by the State*" and serve as "critical buffers between the individual and the *power of the State*." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–19 (1984) (emphasis added). In none of the Supreme Court's associational rights cases is there any hint that the First Amendment protection would (or could) apply to association with the state. Indeed, as noted in the Motion to Dismiss (but ignored by the Plaintiff's Opposition), the Supreme Court's ballot burden cases speak only of the burden on "the right of individuals to associate for the advancement of political

3

beliefs," referring to civil society groups, rather than the rights of individuals associating themselves with the state by being elected to public office. *See Williams v. Rhodes*, 393 U.S. 23, 30 (1968). The compelled association cases cited in the Motion to Dismiss—far from being "inapposite"—serve to underscore the point that association with the state (which can be compelled) is different from any other type of association with any other organization or individual (which cannot be compelled). As much as Plaintiff wishes otherwise, POST is not an advocacy organization but is an arm of the Commonwealth of Massachusetts established by the legislature.[1] The Court should therefore decline Plaintiff's invitation to break new ground by expanding the First Amendment right to association beyond its universally accepted meaning.[2]

### III. Points 1 and 2 Are All That Are Needed to Dismiss This Case.

The Court need look no further than the two arguments set forth above. If Plaintiff has not plausibly pleaded that constitutionally protected activity was the cause of his demotion, there is no need for any further analysis and the Complaint must be dismissed. Should the Court wish to inquire further into the deficiencies of the Complaint, the undersigned presents the following arguments.

### IV. Alternatively, The Court May Dismiss The Case Based on The Pickering Analysis

As an initial matter, the Opposition misstates the law by relying on a theory articulated in the Second Circuit case *McEvoy v. Spencer*, 124 F.3d 92 (2d Cir. 1997), that has never been accepted by the First Circuit. *See generally Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002) (explaining the different "approach" taken by the Second Circuit, as opposed to the First,

---

[1] Plaintiff's "footnote argument" that he was attempting to associate with the other individuals on POST rather than POST itself, *see* Opp. at 9, n.5, is made without citation to any authority. Moreover, it is simply a different way of saying that Plaintiff wanted to associate with POST, since the individuals to which he refers are the members of POST, and he does not argue that he wants to associate with them in a non-POST context.

[2] Plaintiff suggests in his Opposition that it was his association with MAMLEO and Commissioner Cox's purported "animus against MAMLEO" that caused his demotion. *See* Opp. at 9–10. This theory is not present in the Complaint and is belied by the Complaint's own allegations that Plaintiff was promoted to the command staff *after or while* serving as president of MAMLEO. Compl. ¶¶ 24, 28.

4

Seventh, and Tenth Circuits with respect to the policymaker exception); *Foote v. Town of New Bedford*, 642 F.3d 80, 85 n.3 (distinguishing Second Circuit precedent).

Plaintiff's "policymaker" argument is also inconsistent with his Complaint. The Complaint alleges that, as Deputy Superintendent, Plaintiff served "outside any collective bargaining unit," was "part of management," and—most significantly—"**serve[d] *directly* under the Boston Police Commissioner.**" Compl. ¶ 24 (emphasis added). The Opposition, however, states that Plaintiff "expects the evidence to show that . . . he **served *three levels below* the Commissioner.**" Opp. at 12. Setting aside the obvious issues with Plaintiff pleading the opposite of what he expects to prove, the relevant inquiry is what the Complaint alleges, not what Plaintiff wishes he alleged. The Opposition conveniently ignores Plaintiff's own allegation that he *admitted* to Commissioner Cox that the "ultimatum to either resign from the command staff or the POST Commission [is] a decision I firmly believe is yours to make," Compl. Ex. C, ECF 1-5, at 2, underscoring Plaintiff's acknowledgment that, as a member of the command staff, his leadership role rested within the discretion of Commissioner Cox. The Opposition also wholesale disregards that the Massachusetts legislature has specifically articulated that the Commissioner of BPD has complete discretion over the composition of his command staff: he may appoint members of the BPD to the Command Staff as "he may from time to time deem proper," and, further, that the legislature has specifically exempted command staff appointments from civil service protections. *See* 1964 Mass. Acts. 720–21. Although Plaintiff points out that Commissioner Cox did not cite any cases where the policymaker exception is applied in the motion to dismiss context, there are many such cases to cite. *See, e.g.*, *Wagner v. Devine*, 122 F.3d 53, 56–57 (1st Cir. 1997); *McCaffrey v. Chapman*, 921 F.3d 159, 167–170 (4th Cir. 2019);

5

*Haddock v. Tarrant Cnty., Texas*, 852 F. App'x 826, 829, 831, 833 (5th Cir. 2021); *Hagan v. Quinn*, 867 F.3d 816, 823–26, 830 (7th Cir. 2017).

With respect to the general *Pickering* analysis, Plaintiff repeatedly states that "because [Plaintiff] pledged to recuse himself from any POST actions concerning BPD, his POST service would not directly impact BPD in any way at all." Opp. at 13. This argument ignores that Commissioner Cox articulated a "reasonable prediction of disruption," *MacRae v. Mattos*, 106 F.4th 122, 138 (1st Cir. 2024), because Plaintiff's "pledge" was in no sense a guarantee, and it would be Plaintiff himself deciding when recusal was warranted and when it was not. The Opposition declines to address Commissioner Cox's argument that whatever the Attorney General's Office and the State Ethics Commission found regarding a *legal* conflict of interest between public and private interests is irrelevant to the efficiencies of running an effective police department when one member of the command staff is also serving as the police department's regulator.[3]

## V. Alternatively, the MCRA Claim Fails.

The Opposition ignores the Complaint's descriptions of Plaintiff's conversations with Commissioner Cox regarding the POST appointment as "insightful, meaningful, and thought provoking" and that Plaintiff told Commissioner Cox that he "appreciate[d] the dialogue and [their] different perspectives[.]" Compl. Ex. C, ECF No. 1-5 at 2. In light of those allegations, it is simply not plausible that Plaintiff experienced the "threats, intimidation, or coercion" necessary for an MCRA claim. "[T]he exception for claims based on non-physical coercion remains a narrow one," *Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018), and accepting

---

[3] Plaintiff states that service of a Deputy Superintendent of the Boston Police Department is consistent with the POST statute because the statute requires that at least one Commissioner be a police chief. Opp. at 2. But a police chief is in charge of the department, and therefore his concurrent service on POST does not create the chain-of-command and efficiency issues that are present when a member of the Boston Police Commissioner's command staff is serving as the Department's primary regulator.

Plaintiff's argument—especially in light of the Complaint's characterization of his discussions with Commissioner Cox as respectful—would vastly broaden this exception.

As to what the Opposition calls "coercion," "[t]he legal definition of 'coercion' requires that one be 'constrain[ed] … to do against his will something he would not otherwise have done.'" *Stuart v. City of Gloucester*, No. 18-cv-11877-ADB, 2019 WL 3082830, at *12 (D. Mass. Jul. 15, 2019) (citation omitted).  Plaintiff continues to serve on POST.  Because Plaintiff "does not allege in the Complaint or indicate in his briefing . . . any action that [he] took or did not take as a result of the alleged economic coercion[,] . . . the Complaint does not adequately allege that [Plaintiff] was subject to [ ] coercion." *Id.*

Finally, Plaintiff's allegations that he experienced problems with the handling of pay and re-assignment to a different district occurred *after* Plaintiff chose not to resign from POST and was removed from the command staff (the alleged deprivation of his constitutional right).  The allegations regarding pay and transfer are merely statements of Plaintiff's alleged damages "[a]s a result of [the] demotion."  *See* Compl. ¶¶ 48–50, 56, 62.  And even assuming that these post-demotion difficulties represented retaliation in violation of Plaintiff's rights, a "direct deprivation of rights [ ] is not actionable under the MCRA." *Martone Place, LLC v. City of Springfield*, No. 16-cv-30170-MAP, 2017 WL 5889222, at *23 (D. Mass. Nov. 29, 2017).[4]

## VI. Alternatively, It is Not Premature to Decide Qualified Immunity.

Plaintiff argues that it is inappropriate to decide qualified immunity because the court lacks a robust factual record.  But where the Court can make a qualified immunity determination based on the legal theories expressed in the complaint without further factual explication, the

---

[4] Plaintiff is also silent in light of Commissioner Cox's citation of black letter law that holds that the Count II official capacity claim must be dismissed because "a municipality cannot be sued under the MCRA" and "[t]he MCRA claim against Defendant in his capacity as [commissioner of police] is clearly a claim against the city." *See, e.g.*, *Fletcher v. Szostkiewicz*, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (citation omitted).

7

decision must be made at the 12(b)(6) stage. *See Eves v. LePage*, 927 F. 3d 575, 583 n.5 (1st Cir. 2019) (en banc) (affirming dismissal, stating that the "[t]he Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation'" and noting multiple occasions where the Supreme Court and the First Circuit have affirmed motions to dismiss on qualified immunity grounds) (citations omitted).

Qualified immunity is appropriate here because Plaintiff alleges novel free speech and associational claims and fails to cite any analogous authority that would support these unprecedented legal theories. Despite Plaintiff's attempts to recharacterize his claims, the Complaint does not plausibly allege that Plaintiff was demoted for any reason other than his acceptance of the POST appointment. The Opposition makes no serious attempt to explain how acceptance of the POST appointment would qualify as free speech or free association, much less how any such rights were "clearly established" in this context. It would therefore not have been "beyond doubt" to Commissioner Cox that his conduct was unlawful because of the very novelty of Plaintiff's legal theories (which do not rely on any disputed facts). *See Eves*, 927 F.3d at 583 (affirming motion to dismiss on qualified immunity grounds). The Opposition also ignores an additional critical detail underlying this analysis: it would not have been "beyond doubt" to Commissioner Cox that his conduct was unlawful because—according to the Complaint itself— Plaintiff told Commissioner Cox that removing him from the Command Staff was "a decision I firmly believe is yours to make." Compl. Ex. C, ECF No. 1-5 at 2.

Plaintiff argues that "an officer is not entitled to qualified immunity if they act in 'bad faith or [with] malice.'" *Rizzuti v. Cappabianca*, No. 4:22-cv-40094-MRG, 2025 WL 2022125, at *33 (D. Mass. Jul. 18, 2025) (citation omitted). This argument badly misstates the law. The "malice" immunity standard applies "[u]nder Massachusetts common law" and "is a distinct

8

standard from the federal qualified immunity doctrine." *Id*. The federal qualified immunity standard, on the other hand, "eliminates from consideration allegations . . . such as bad faith or malicious intention." *Floyd v. Farrell*, 765 F.2d 1, 4 (1st Cir. 1985).

\* \* \*

For the reasons stated above and in the Memorandum of Law in Support of the Motion to Dismiss, Commissioner Cox respectfully requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

Dated: August 14, 2025

Respectfully submitted,

MICHAEL A. COX, individually and in his official capacity as Commissioner of the Boston Police Department,

By his attorney,

*/s/ Joshua C. Sharp*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1065
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed electronically on August 14, 2025 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").

*/s/ Joshua C. Sharp*
Joshua C. Sharp