UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDDY CHRISPIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-cv-10793-ADB |
| MICHAEL A. COX, individually and in his official capacity as Commissioner of the Boston Police Department, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

In this action, Eddy Chrispin ("Chrispin"), a sergeant detective and former deputy superintendent of the Boston Police Department ("BPD"), brings claims against BPD's commissioner, Michael Cox ("Cox"), under the First Amendment and the Massachusetts Civil Rights Act, challenging Cox's demotion of Chrispin from BPD's Command Unit following Chrispin's acceptance of a position on the Massachusetts Peace Officer Standards and Training Commission ("POST"). [ECF No. 1 ("Compl.")]. Cox moves to dismiss for failure to state a claim. [ECF No. 10]. For the following reasons, Cox's motion is **<u>GRANTED</u>**.

## I.    BACKGROUND

### A.    Factual Background

The complaint alleges as follows. Chrispin, a Black Haitian man who immigrated from Haiti when he was seven and grew up in Mattapan, [Compl. ¶¶ 3, 15], joined BPD in 1999 to "effect positive change within his community by 'working within the system,'" [id. ¶ 18]. He is

a graduate of the University of Massachusetts–Boston and Hofstra Law School, [id. ¶¶ 15–16], and prior to joining BPD, he worked for the Massachusetts Department of Children and Families, [id. ¶ 16], the Massachusetts Department of Youth Services, [id. ¶ 17], and the Dorchester Division of the Boston Municipal Court, [id.].  Since 1999, Chrispin has risen through BPD's ranks, see [id. ¶¶ 19–23], culminating in a promotion to deputy superintendent in January 2021, [id. ¶ 24], at which time he was selected for "command staff," [id.], which meant he "serve[d] directly under the Boston Police Commissioner" and was "part of management," [id.].

Throughout his career, Chrispin has been a "vocal and outspoken advocate for increased transparency and accountability," [Compl. ¶ 26], and "improved hiring and promotional opportunities for minority officers," [id. ¶ 27].  He is committed to "enhancing police-community relations," [id. ¶ 34], by "gain[ing] community trust," [id. ¶ 26], and "diversify[ing] the BPD leadership [to] better reflect the community that BPD serves," [id. ¶ 27].  From 2019 to 2021, Chrispin served as president of the Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO"), of which he had been a longtime member, [id. ¶¶ 3, 28], and in 2020, he served on an "eleven-person Boston Police Reform Task Force," [id. ¶ 29].

In 2024, MAMLEO nominated Chrispin for a position on POST.  [Compl. ¶ 33].  POST is a commission of the Massachusetts government, see generally Mass. Gen. Laws ch. 6E, § 2, and its nine members are appointed by the governor and attorney general, id. § 2(a).  POST issues, suspends, and revokes police officers' law-enforcement certifications, id. §§ 4, 9, 10, and is the "primary civil enforcement agency," id. § 3(a)(1), for violations of Massachusetts law related to law-enforcement certification, reporting, and employment, see generally id. §§ 3–5, 8–16.  If POST appears in court, it is represented by the attorney general.  Id. § 2(j); Mass. Gen. Laws ch. 12, § 3.  By statute, one member of POST "shall be a law enforcement officer

2

appointed from a list of 5 nominations submitted by [MAMLEO]." Mass. Gen. Laws ch. 6E, § 2(a).

After an "interview and vetting process" conducted by the attorney general, Chrispin was sworn in as a POST commissioner on May 24, 2024. [Compl. ¶¶ 34–35]. On June 25, 2024, David Fredette ("Fredette"), a BPD legal advisor, told Chrispin that "the department's leadership believed that his service as [a] POST commissioner posed a conflict of interest with his role as Deputy Superintendent because he was privy to highly sensitive BPD information while serving in a command staff position." [Compl. ¶ 40]. Chrispin argued to Fredette, and shortly thereafter to senior BPD leadership, that there was no inherent conflict of interest in his occupying the two roles, provided that he observed certain safeguards. [Id. ¶¶ 40, 42]. Chrispin also consulted the attorney general's office and the state ethics commission, both of which concluded that there was no conflict. [Id. ¶ 41]. Nonetheless, on June 29, 2024, Cox informed Chrispin that he would need to "resign his position as POST commissioner or be demoted from the command staff." [Id. ¶ 44]. The ultimatum was confirmed by Fredette, who told Chrispin that if he did not abandon his POST appointment, he would be "broken," meaning "stripped of his rank." [Id. ¶ 45].

Chrispin refused to resign from POST, [Compl. ¶ 46], and on July 3, 2024, Cox demoted him to sergeant detective, [id. ¶ 47], after which he was reassigned to a "Charlestown district that is less busy, and gives him fewer opportunities for community engagement," [id. ¶ 50]. The demotion caused Chrispin financial and psychological harm, see [id. ¶¶ 48–49], and in his view, "his career advancement within BPD is now effectively over," [id. ¶ 48]; accord [id. ¶ 50].

### B. Procedural History

Chrispin filed his complaint on April 3, 2025. [Compl.]. Cox moved to dismiss on July 3, 2025, [ECF No. 10]. Chrispin opposed the motion on July 31, 2025, [ECF No. 14], and Cox filed a reply on August 14, 2025, [ECF No. 15].

## II.   LEGAL STANDARD

A complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). The facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but the pleading must set forth "more than labels and conclusions." Twombly, 550 U.S. at 555. Legal conclusions couched as facts or "[t]hreadbare recitals of the elements of a cause of action" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555); accord Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III.     DISCUSSION

Chrispin claims that his demotion was unlawful retaliation for the exercise of a protected First Amendment right, [Compl. ¶¶ 51–56], and in violation of the Massachusetts Civil Rights Act, [id. ¶¶ 57–62].[1]

#### A.     First Amendment Retaliation

To maintain a First Amendment retaliation claim, Chrispin must "plead that he engaged in First Amendment–protected conduct, that he suffered an adverse action, and that his protected conduct played a 'substantial or motivating' part in the adverse action." Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 37 n.4 (1st Cir. 2024) (citing Gattineri v. Town of Lynnfield, 58 F.4th 512, 514 (1st Cir. 2023)); accord D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). Accordingly, Chrispin must assert conduct protected by the First Amendment that was a substantial or motivating factor in his demotion. Here, the only conduct pleaded in the complaint as a cause of Chrispin's demotion is his acceptance of the POST appointment.[2] See [Compl. ¶ 44 (claiming that Chrispin could either "resign his position as POST commissioner or be demoted from the command staff")]; [id. ¶ 45 (claiming that he was made to "choose . . . between keeping the POST appointment or being [stripped of rank]")]; [id. ¶ 48 (attributing his demotion to his "cho[ice] to accept the Attorney General's appointment to serve

---

[1] Chrispin originally also claimed deprivation of a constitutionally protected property interest in his employment without due process of law, [Compl. ¶¶ 63–67], but his opposition indicates that he "does not oppose the motion to dismiss [that claim]," [ECF No. 14 at 4 n.2], and does not offer any argument in defense of it. Accordingly, that claim will be dismissed.

[2] Though Chrispin asserts that he engaged in other protected conduct, see [ECF No. 14 at 6–10], he does not plead facts that would establish that such conduct was a substantial or motivating reason for his demotion. See Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 36 (1st Cir. 2020). To the contrary, the complaint implies that Chrispin could have avoided demotion by "resign[ing] his position as POST commissioner." [Compl. ¶ 44].

on POST")].  The dispositive issue is thus whether Chrispin's acceptance of the POST

appointment was protected by the First Amendment.  Chrispin argues that it was, for two

reasons.

i.    Expressive Conduct

Chrispin first argues that his "acceptance of the POST appointment was an expressive act

that qualified as symbolic speech," [ECF No. 14 at 5].  The Supreme Court has long recognized

that "the Constitution looks beyond written or spoken words as mediums of expression."  Hurley

v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557, 569 (1995).  To determine

whether an action constitutes expressive conduct protected by the First Amendment, courts look

to "the context in which the conduct took place, asking 'whether [a]n intent to convey a

particularized message was present, and [whether] the likelihood was great that the message

would be understood by those who [perceived] it.'"  Meaney v. Dever, 326 F.3d 283, 287 (1st

Cir. 2003) (quoting Texas v. Johnson, 491 U.S. 397, 404 (1989)).  The message need not be

"narrow [and] succinctly articulable," Hurley, 515 U.S. at 569; see also Meaney, 326 F.3d at

287–88 (assuming, despite misgivings, that plaintiff's honking during a mayoral inauguration

could imply support for unions who had picketed the mayor), but "the Supreme Court has

repeatedly rejected the view that 'an apparently limitless variety of conduct can be labeled

'speech' whenever the person engaging in the conduct intends thereby to express an idea,"

Zalewska v. County of Sullivan, 316 F.3d 314, 319 (2d Cir. 2003) (quoting United States v.

O'Brien, 391 U.S. 367, 376 (1968)).

Here, Chrispin has not pleaded an act with "sufficient communicative elements to

constitute expressive conduct protected by the First Amendment."  Meaney, 326 F.3d at 287.  In

his opposition to Cox's motion to dismiss, Chrispin argues that by accepting the appointment, he

"intended to communicate his deeply-held support for the police reform movement," [ECF No. 14 at 6], but his complaint only states that he accepted it "because it advanced his lifelong commitment to police reform and better police-community relations in Boston," [Compl. ¶ 8]. To amount to protected conduct, moreover, "the likelihood [must be] great that the message [of an action] would be understood by those who viewed it." Spence v. State of Washington, 418 U.S. 405, 411 (1974) (emphasis added).  Chrispin does not identify any aspect of "the context in which his conduct took place," Meaney, 326 F.3d at 287, that could establish how his appointment could "reasonably be understood by [a] viewer to be communicative." Hernández-Gotay v. United States, 985 F.3d 71, 80 (1st Cir. 2021) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294 (1984)).  Further, Chrispin does not direct the Court to any case in which a government appointment was held to have communicated a message likely to be understood by others.  He does, see [ECF No. 14 at 5–6], point to iconic examples of expressive conduct—marching in a parade, Hurley, 515 U.S. at 569; and flag burning, Johnson, 491 U.S. at 406—but these examples are manifestly different from accepting an appointment to an oversight board like POST, and Chrispin has not explained why the Court should extrapolate from those cases to the situation here.

ii.      Association with POST

Chrispin next argues that his associational rights under the First Amendment protect his right to join POST.  [ECF No. 14 at 13–14].  The Court disagrees.  Appointment to a government office such as POST is different from membership in a private political association.  Chrispin, who bears the burden of "show[ing] that his conduct was constitutionally protected," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977), has not explained how accepting an appointed office is analogous to a protected right of private association.  He also

7

has not identified any case, nor is this Court aware of any, in which a court has recognized a First Amendment right to hold government office.  See [ECF No. 14 at 8–9].

### iii.    Summary

Because he has not established that accepting an appointed position in state government is protected speech or association, Chrispin has failed to state a claim for First Amendment retaliation.  Accordingly, the Court does not address Defendant's alternative argument that Pickering would have permitted Chrispin's demotion even if his conduct were protected.  See [ECF No. 11 at 7–11].

### B.    Violation of Massachusetts Civil Rights Act

Chrispin also alleges that his demotion violated the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I (together, the "Massachusetts Civil Rights Act" or "MCRA"), which creates a private right of action for "[a]ny person whose exercise or enjoyment of rights secured by the constitution or law of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with."  Currier v. Nat'l Bd. of Med. Exam'rs, 965 N.E.2d 829, 837 (Mass. 2012) (quoting Mass. Gen. Laws ch. 12, § 11I); see [Compl. ¶¶ 57–62].  To maintain a claim under the MCRA, "a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion."  Currier, 965 N.E.2d at 837–38 (citing Buster v. George W. Moore, Inc., 783 N.E.2d 399 (Mass. 2003)).

As explained above, Chrispin has not plausibly alleged a First Amendment violation, which is the primary constitutional basis underlying his MCRA theory of liability, see [ECF No. 14 at 14].  Though the complaint also makes passing reference to Article 16 of the Massachusetts

Declaration of Rights, [Compl. ¶ 58], it does not articulate how, if at all, his Article 16 theory is different from his First Amendment theory.  Article 16 "provides analogous protections" to the First Amendment in most instances, Mass. Coal. for the Homeless v. City of Fall River, 158 N.E.3d 856, 860 (Mass. 2020), and Chrispin has not argued that these facts constitute an "instance[] [in which Article 16] provides more protection . . . than the First Amendment," id. (citing Mendoza v. Licensing Bd. of Fall River, 827 N.E.2d 180, 190 (Mass. 2005)). Accordingly, because he has not pleaded facts that establish interference with a right under state or federal law, Chrispin's allegations do not state a claim for relief on his MCRA theory.

IV.    **CONCLUSION**

Because Chrispin's complaint does not set forth adequate factual allegations to state a claim for relief for First Amendment retaliation or for violation of the Massachusetts Civil Rights Act, Defendants' motion to dismiss, [ECF No. 10], is **GRANTED**. The action is **DISMISSED** with leave to amend within 21 days.

**SO ORDERED.**

March 30, 2026                                                          */s/ Allison D. Burroughs*
                                                                       ALLISON D. BURROUGHS
                                                                       U.S. DISTRICT JUDGE

9